Case 24—PETITION EQUITY—February 5. ·

# Gross, &c., v. Eddinger, &c.

# Same v. Conrad, &c.

APPEALS FROM LOUISVILLE CHANCERY COURT.

Fraudulent Conveyances—Husband and Wife.—A debtor trans-- ferred his business to his wife, who was totally unfit for the business,, and had no means of her own with which to carry it on, a decree of court empowering her to trade as a *feme sole* being first obtained.. Thereafter the business was carried on by the husband as "agent" for the wife. The business was finally sold, and with the proceeds a. lot was purchased and improved, the conveyance being made to the wife. This is an action by the husband's creditors to set aside that conveyance as fraudulent. *Held*—That the plaintiffs are entitled to the relief sought.

M. A. & D. A. SACHS for appellants.

1. The money with which Mrs. Gross began business was saved from time to time in small amounts, out of money given to her by her husband for her personal expenses, and was, therefore, her separate estate. (Story's Equity, vol. 2, section 1375a.)

   To create a separate estate, no writing or particular form is necessary. (McClanahan v. Beasley, 17 B. Mon., 113; Shackleford v. Collins, 6 Bush, 157; Walton v. Broadus, 6 Bush, 329.)

   Personalty given or sold by husband to wife makes the husband trustee for his wife, he holding the property as her separate estate in trust for her. (Maraman v. Maraman, 4 Met., 84; Campbell v. Galbreath, 12 Bush, 459; Thomas v. Harkness, 13 Bush, 23.)

   Trivial gifts made in good faith cannot be regarded as fraudulent.. (Waite on Fraudulent Conveyances and Creditor's Bills, sections 15,. 23 and 41; Hopkirk v. Randall, 2 Brock., 140.)

   The giving of a reasonable sum by an insolvent husband to his wife· is not a fraud on his creditors. (Thompson v. Cundiff, ·11 Bush, 569; Mayo v. Ferguson, 3 Ky. Law Rep., 687; Marshall v. Marshall, 2 Bush, 415.)

2. The husband's creditors can not subject the profits of the wife's business after she became empowered to trade as a *feme sole*. (Wiggins v. Johnson, &c., 8 Ky. Law Rep.; Morel v. Haller, 7 Ky. Law Rep., 122; Unz v. Oswald, 6 Ky. Law Rep., 518; Carter v. Drewerry, 4 Ky. Law Rep., 888; Clifford v. Thompson, 4 Ky. Law Rep., 1002.)

Gross, &c., v. Eddinger, &c. Same v. Conrad, &c.

LANE & BURNETT FOR APPELLEES.

1. The property sought to be subjected was paid for with the proceeds of the husband's property, and, therefore, the conveyance to the wife was fraudulent as to his creditors.

Where a deed is made to one person, and the consideration paid by another, such deed is to be deemed fraudulent as against the existing debts and liabilities of the person paying the consideration. (General Statutes, chap. 63, art. 1, sec. 20; 16 B. Mon., 183; 8 B. Mon., 568.)

2. Mrs. Gross, at the time she was empowered to trade as a *feme sole*, owned no estate, general or separate, and has received nothing since that was not given to her by her husband. Therefore, the fact that she was empowed to trade as a *feme sole* does not exempt property paid for by the husband and conveyed to her from being subjected by his creditors.

An insolvent husband can not carry on his own trade with his own money, or with money donated by him, in the name of his wife and under cover of being her trustee, and thereby defeat his creditors. (Bump on Fraudulent Conveyances, p. 249; Robinson v. Bernes, 90 Ill., 351; Glidden v. Taylor, 16 Ohio, 509; Powley v. Vogel, 42 Mo., 291; Penn v. Whitehead, 12 Grattan, 74; Shephard v. Hill, 6 Lansing, 387; Franklin, *Ex Parte*, 79 Ky., 497; Hall v. Scrouft, 52 Ill. 421.)

3. The judgment of the chancellor upon the questions of fact must be taken as the verdict of a properly instructed jury.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellees instituted their respective actions in the Louisville chancery court for the purpose of setting aside a conveyance of a house and lot to appellant M. E. Gross, the wife, and subjecting it to the satisfaction of their debts against Geo. S. Gross, the husband. And the two cases being tried together, judgment was rendered in favor of each of the plaintiffs for a sale of the property as prayed for in their petitions. The action of appellees Eddinger & Bro. was upon a judgment rendered in their favor against Geo. S. Gross, October, 1880, for two hundred and sixteen dollars and eighty-three cents and interest from that date, upon which an execution was duly issued and returned by the proper officer

with an indorsement thereon, no property found. The action of appellees Plaffenger & Co., now standing in the name of Conrad, surviving partner, was upon an open account against him, extending from March, 1879, to March, 1880, the balance claimed being one hundred and eighty-eight dollars and sixteen cents.

In the first-named action, it is stated that subsequent to the issuing and return of the execution mentioned, Geo. S. Gross purchased the property, and in order to cheat, hinder and delay his creditors, fraudulently caused the deed therefor of date September, 1883, to be made to his wife, M. E. Gross, notwithstanding he is the real owner of and paid for the property and improvements thereon. In the other action substantially the same allegation of fraud is made, and an attachment was asked, issued and levied on the house and lot.

It appears from the evidence, that in 1879 Geo. S. Gross was the owner of a coffee-house on Water street, in the city of Louisville. But in October, 1880, a license to carry on a tavern with the privilege to retail liquor at the corner of Twelfth and Main streets for one year from July, 1880, was issued to "Geo. Gross, Agent."

In July, 1881, by judgment of court, M. E. Gross was empowered to act as a *feme sole* as provided by statute, and on the twenty-third of that month a license was issued to her to keep a tavern at the same place for one year, the bond required in such cases being signed, "M. E. Gross by Geo. Gross, Agent." From that place they removed to Market, between Third and Fourth streets, where the same business was continued in her name about four months, when the business and property

were sold, according to the deposition of Geo. Gross, for a profit of one thousand dollars, and with that and the profits on the sales of the bar, the lot was purchased and the improvements put on it, the whole costing about two thousand dollars.   In addition, there was enough to recommence the same business at another stand on Market street, where they now are.   M. E. Gross had no means of her own at the time the business was commenced at the corner of Twelfth and Main, except such as may have been given to her by her husband, which was very little, if any thing.   There is no satisfactory reason given by either of them for the sudden transfer of the ownership of what little capital he may have had to her, and the assumption by him of the position of agent instead of principal in the business.   She is not shown to be at all qualified or adapted for the business of retailing liquors, nor does she appear to have had any discretion, or to have given any attention to the management of it.   Though asked to state, she could not tell from whom the bar-room at Twelfth and Main streets was purchased or leased, nor how much was paid or agreed to be paid for it.   She does not state how much money she had of her own when they went to that place, nor that she had any except that given by her husband.   She bought no supplies, made no sales, handled none of the money, but admits in her deposition that her time was taken up in attending to household duties and caring for her children.   She did not handle or control the one thousand eight hundred dollars for which the business on Market between Fourth and Fifth streets was sold, being ignorant of the bank it was deposited in.   She does not appear to have had

any thing to do with the negotiation for the lot in question, nor could she, in her deposition, state how much was paid for it, or for the improvements put on it. The entire management and control of the business now claimed to belong to the wife was left to the husband without question or knowledge on her part of the manner in which he was carrying it on. , And the only explanation he undertakes to give for this extraordinary abandonment by him of the ownership of the business and transfer to his wife, who was . totally unfit for it, and without means of her own to carry it on, is that he for a short time had rheumatism—how long does not appear. Though by his skill and industry alone—for she contributed nothing—enough was realized out of the business in about two years after she was invested with the rights of a *femè sole* to buy and improve the lot at a cost of· about two thousand dollars, besides furnishing stock for the new stand on Market between First and Second streets. He claimed neither compensation nor share in the profits, but when asked what he was to receive for his services, said : "I got all I wanted to eat, clothes to wear, and a good bed to sleep on."

It seems to us that, as this record stands, it would be contrary to common experience and common sense to attribute the conduct of the husband and wife to any other purpose than a fraudulent device to cheat, hinder and delay his creditors. And as the condition of the parties was not such as authorized the judgment making her a *feme sole* in the meaning of the statute, it is a reasonable supposition it was sought by them in order to further his fraudulent purpose.

As, therefore, the transfer by him to her of his capital

and business was fraudulent as to his creditors, the lot in question purchased with the proceeds is liable to the debts of appellees, which existed when the transfer was made, for she contributed neither capital, labor or skill in the purchase of the lot.

Wherefore, the judgment in both cases is affirmed.