CASE 22—PETITION EQUITY—APRIL 4.

# Brooks–Waterfield Co. v. Frisbie, et. al.

99    125
f130   824

99    125
d138   187

APPEAL FROM HARRISON CIRCUIT COURT.

1. FRAUDULENT CONVEYANCE—HUSBAND AND WIFE.—Where an insolvent husband pays out of his own means part of the purchase price on real estate, which is conveyed to his wife, his interest therein may be subjected to the payment of his antecedent debts. The evidence in this case shows that the husband had at least an interest worth $3,000 in the property sought to be subjected.

2. EARNINGS OF INSOLVENT HUSBAND.—Where the increase in value of the wife's property and the accumulation of her property and means is chiefly due to the labor and skill and energy of the insolvent husband, a part of such increase and accumulation may be treated as his earnings, and subjected to the payment of his debts.

3. GIFT BY HUSBAND TO WIFE.—CONTRACT.—Such earnings can not be legally given to the wife by him, so as to defeat the claims of his creditors; and the fact that the husband engaged to render services to the wife at an inadequate price can not change this principle.

T. T. FORMAN FOR APPELLANT.

1. The courts by conferring upon the wife of an insolvent debtor the right to trade as a *feme sole*, do not give to him the right, by acting as agent for her, to place his own earnings beyond the reach of his creditors.   (Moran v. Moran, 12 Bush, 303.)

2. The evidence in this case shows beyond doubt that the property of the wife was greatly increased, and large accumulations made therefrom, solely by the energy, efforts and business foresight and sagacity of the husband.

3. A decree empowering the wife to trade as a *feme sole* is no barrier to subjecting the property of the husband to the payment of his debts even though the property stands in the name of the wife.

(Carter Bros. v. Martin, 12 Ky. Law Rep., 837; Carson v. Jones, Mss. Opinion Superior Court, decided February 1, 1893.)

W. S. CASON, ON SAME SIDE, IN RESPONSE TO PETITION FOR REHEARING.

1. Where the rents and profits of the wife's lands are so increased by his labor or means as to exceed the necessities or comforts of his family, the excess which is traceable to his labor or means may be subjected to his debts, after as well as before she is empowered to trade as a *feme sole*.  (79 Ky., 497; 6 Bush, 159; 91 Ky., 294; 96 Ky., 425.)

J. T. SIMON FOR APPELLEE.

1. A  ife has the right to invest rents received by her, in real estate with the consent of her husband.  (Howard v. Tenny, 85 Ky., 52.)
2. If a wife, after being empowered to act as a *feme sole*, can trace her money into the business conducted by her husband in her name, she can prevent his creditors from subjecting it to the satisfaction of their claims.  (Carson v. Jones, 14 Ky. Law Rep., 667.)
3. The appellant has not established a single one of his many charges of fraud.

J. T. SIMON, J. Q. WARD AND BLANTON & BERRY ON SAME SIDE,

IN PETITION FOR REHEARING.

1. The judgment of a chancellor granting the wife the right to trade as a *feme sole* converts the property that the wife then owns or may thereafter acquire, into separate estate.  (Penn v. Young, 10 Bush, 626.)  And it secures to her the profits of any trade she may engage in.  (69 Ill., 624; 67 Barb., 326.)
2. A married woman is entitled to her own earnings including the profits of a business carried on by her with capital which is her separate property, and make contracts with respect thereto as if she were *sole*, enforceable by or against her in legal actions.  (46 Wis., 655, 37 Amer. Reps., 824.)
3. Under statutes enabling married women to trade, they may trade precisely as if unmarried; she is as to her business a *feme* sole, and she may do all things incidental to trading in general, and all things usual and proper in the particular trade in which she is engaged.  (Young v. Gori, 13 Abb. Pr., 13; Trieber v. Storer, 30 Ark., 727; Camden v. Mullen, 29 Cal., 564; Porter v. Gamba, 43 Cal., 105; Rockwell v. Clark, 44 Conn., 534; Martin v. Ward, 19

Brooks-Waterfield Co. v. Frisbie, et. al.

Fla., 175; Nispel v. Laparle, 74 Ill., 306; Wallace v. Rawley, 91 Ind., 586; Tallman v. Jones, 13 Kan., 438; Mitchell v. Sawyer, 21 Iowa, 582; Snow v. Sheldon, 126 Mass., 332; Knowles v. Hull, 99 Mass., 562; Rankin v. West, 25 Mich., 195; Parshall v. Fisher, 43 Mich., 529; Allen v. Johnson, 48 Miss., 413; Nettervill v. Barber, 52 Miss., 168; Youngworth v. Jewell, 15 Nev., 45; Wheaton v. Phillips, 12 N. J. Eq., 221; James v. Taylor, 43 Barb., 530; Abbey v. Deyo, 44 Barb., 397; Nash v. Mitchell, 71 N. Y., 200; Frecking v. Rolland, 53 N. Y., 422; Baum v. Mullen, 47 N. Y., 577; Sannis v. McLaughlin, 35 N. Y., 647; Morgan v. Perhames, 36 Ohio, 517; Silveus v. Porter, 74 Pa., 448; Williams v. Lord, 75 Va., 390; Dayton v Walsh, 47 Wis., 519.)

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

It appears from the record in this case that prior to 1885 the appellee, H. D. Frisbie, was a prosperous business man, in apparent good financial condition, and that, in addition to his individual business, he was in partnership with—— Lake, but that some disease seized a large number of cattle belonging to him, or the firm of Lake & Frisbie and perhaps some other financial reverses befel him, rendering him, as it seems, unable to pay his debts, and that he made an assignment in 1885, but the firm did not assign.

It also appears that said Frisbie owed about $21,000, and that his assets were about $6,000. About $15,000 of the indebtedness was due to appellee's father-in-law, Judge Day, the other principal creditor being the appellant.

After paying the cost of settling the estate assigned, and also paying the appellee, Mrs. Frisbie, $1,000 for her contingent right of dower in real estate assigned, the estate only paid 18.42 cents to the dollar on the ordinary claims.

Appellant's claim was a debt due from the firm of Frisbie & Lake, and in 1888, it obtained judgment against H. D. Frisbie, surviving partner of said firm, as well as individually, for the s um of $4,872, with interest from the 22d of

April, 1886, upon which executions were issued and returned no property found, but it also appears that $988.62 was paid on the judgment by the master commissioner, in case of Lake v. Lake, September 8, 1888; also paid by the master commissioner, as it seems, out of the assets assigned as aforesaid, $1,036.52, January 5, 1889.

In 1887 the appellee, Mrs. Frisbie, was by judgment of the court empowered to do business as a *feme sole.* On the 18th of November, 1892, the appellant instituted this action in the Harrison Circuit Court, seeking to subject certain property conveyed to Mrs. Frisbie to the payment of its said judgment.

It is alleged in the petition that the appellee, Mrs. Frisbie, has the legal title to certain parcels of valuable real estate, conveyed under the circumstances set out, viz.: One parcel or lot in Cynthiana, Ky., on east side of Walnut street, between Pike and Pleasant, conveyed to her by W. H. Hutman and wife, 23d of March, 1880, which was made to her at the request of her husband, who, out of his own means, paid therefor $1,100 cash in hand.

It is also charged that, after the creation of the debt sued on, H. D. Frisbie, with the fraudulent intent and purpose to cheat, hinder and delay plaintiff in the collection of its debt, and of which purpose appellee, Mrs. Frisbie, had knowledge, did erect on said grounds two double-brick houses—that is, four dwellings—one of which he and his family occupy; another is held and occupied by their tenant, defendant T. B. Smith; another by one Givens, and the fourth by defendant, Moses Levy, at a rental value of about $25 per month each; that said improvements were erected by H. D. Frisbie out of his own means and property as an investment, and not for use of his family, except as to one

set of the four dwellings, and cost about $11,000, and are valuable and lasting.

2d. That by deed of 28th of January, 1887, Lewis Day's administrator conveyed to Mrs. Frisbie a lot of ground on the south side of Pike street, fronting on said street, the consideration being $1,560, of which sum H. D. Frisbie paid $527 for the same purpose as before charged, and that Mrs. Frisbie knew of the same and participated in the fraud; that the lot is improved, and rents for about $30 to defendant, Mussellman.

3d. That on February 17, 1892, T. W. Hedges conveyed to Mrs. Frisbie, in consideration of $1,725, a certain house and lot on the east side of Walnut street, $800 cash paid, the residue on time, which notes were assigned to the defendant national bank; that H. D. Frisbie, out of his own means, erected thereon a large three-story brick storehouse, glass and iron front, at a cost of not less than $8,000. The same charges of fraud are made as to the purchasers and improvements.

4th. That upon a lot allotted to Mrs. Frisbie, in settlement of the estate of Lewis Day, H. D. Frisbie, with like fraudulent purpose, erected out of his own means and as an investment, on said lot, a frame warehouse and storehouse, at a cost of about $1,000, the same being valuable and lasting,, and increasing the rental value from nothing to about $30 per month.

The appellant prays that the various parcels of property be put into the hands of a receiver to be rented out, and the rents paid into court, to be apportioned between the plaintiff and Mrs. Frisbie in proportion to the amounts paid by her and that paid by H. D. Frisbie, including the cost of the improvements, except that he asks a sale of the

third tract named, and asks for all proper and general relief.

The answer of appellees may be considered a traverse of all the allegations of the petition, and in effect alleges that all the purchases and payments were made out of and with the means of Mrs. Frisbie.   Appellant in its reply traversed the material averments of the answer.   The court upon final hearing dismissed plaintiff's petition, and from that judgment this appeal is prosecuted.

It appears that H. D. Frisbie in some way paid or settled all debts against him except appellant's claim.   The testimony conduces to show that Mrs. Frisbie constituted her husband her attorney in fact, to do business for her, and that he engaged extensively and very successfully in business.

He engaged in Cincinnati in business under the sign of King's Royal Germature, and made considerable money, his family then living in Cynthiana, Ky., and finally sold out the business for $12,500.   H. D. Frisbie also conducted a furniture, undertaking and wall paper business, under the name of  Frisbie  Furniture  and  Wall  Paper  Co. The name of H. D. Frisbie was for a time on the front of the awning in front of the door, but it was  taken down, H. D. Frisbie saying it was put there by mistake.

The proof also conduces to show the rental values to be something like the sums alleged in the petition, and that H. D. Frisbie conducted a paying and profitable business, and was the real manager, Mrs. Frisbie rarely, if ever, paying any attention to the business.   He also speculated some in South Dakota, and perhaps in Illinois, some or all being profitable.

Mrs. Frisbie does not testify in the case, but the husband

does, and from his notion and construction of Mrs. Frisbie's property, including what he claims to have given her before his failure, shows that she had considerable property before she was authorized to trade as a *feme sole*.

The proof conduces to show that all the property claimed by Mrs. Frisbie was, in May, 1893, worth perhaps between $35,000 and $40,000, with perhaps an indebtedness due from her of $10,000 or $11,000.

There can be no doubt as to the fact that Mrs. Frisbie received several thousand dollars from her parents, and that about $1,000 was by her father given to H. D. Frisbie, but which it seems he afterwards undertook to restore to his wife.

We do not deem it necessary to discuss the allegations of fraud made in the petition. It seems clear to us that the increase or accumulation of property and means is chiefly due to the labor and skill and energy of H. D. Frisbie.

In Moran v. Moran, 12 Bush, 303, it is substantially said that all an insolvent husband may be able to earn beyond the exemptions should go to his creditors, yet appellee's contention in this case is that such earnings may legally be given to the wife.

It will not be contended that if the husband had owned property before the creation of plaintiff's debt, or acquired property afterwards, that he could make a gift of the same to his wife and thus defeat the claim of the appellant; and yet if appellee's contention in this case be conceded the same result is reached. The fact that the husband engaged to render service at an inadequate price can not change the principle involved.

It seems to us that appellee, H. D. Frisbie, was at the time of the trial of this case, June 8, 1893, equitably entitled

to at least $3,000 interest in the property described in the petition and evidence over and above exemptions, exclusive of the homestead, and that this interest, to the extent of $3,000, should have been subjected to the payment of plaintiff's claim, and that the court erred in dismissing appellant's petition.

The judgment is, therefore, reversed and cause remanded, with directions to adjudge a sale of enough of the property, excluding the homestead, to pay plaintiff $3,000, with interest from June 8, 1893, or to place same in the hands of a receiver, to be rented out until the said sum is paid. The chancellor will adopt the mode by him deemed most equitable, and for further proceedings consistent with this opinion.