CASE 99.—ACTION BY T. J. SMITH AGAINST SOPHIA PAT-
TON'S EXECUTOR AND OTHERS TO SUBJECT
LAND TO THE PAYMENT OF PLAINTIFF'S DEBT
AGAINST HER HUSBAND TO WHICH SHE HELD
THE TITLE.—December 11.

# Patton's Exr., &c. v. Smith

130  819
d138  186
138  188

Appeal from Garrard Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiff. Defendants appeal.—Af-
firmed.

1. Husband and Wife—Separate Property of Wife—Liability for
   Debts of Husband.—Since land of the wife cannot be sub-
   jected to the payment of the husband's debts, unless it has
   been set apart for that purpose in the manner provided by
   statute, neither can rent received by her from the land be
   subjected to such debts.

2. Property of Wife—Liability for Debts of Husband.—The in-
   crease in value of land owned by a wife, and of stock and
   other personal property thereon which was represented by
   the labor and skillful management of the husband, was sub-
   ject to his debts.

3. Principal and Surety.—Remedies of Surety Against Principal—
   Execution.—Ky. St. 1903, section 4666, provides that, if the
   surety pays a judgment, he shall have a right to an assign-
   ment thereof from the plaintiff, and that, when the plaintiff
   has been fully satisfied, such assignment shall entitle the
   surety to control the judgment for his own benefit against
   the other defendants. Held, that a surety paying a judgment
   and taking an assignment thereof may have execution there-
   on for the amount paid by him, with interest thereon from
   the date of payment, though in this particular the execution
   may not follow the judgment.

4. Judgment — Action on Judgment — Limitations.—As a surety
   obtaining an assignment of a judgment against himself and

his principal is substituted to all the rights of the judgment creditor, his right of recovery is ruled by the 15-year statute of limitations applying to judgments, and not the 5-year statute.

LEWIS L. WALKER for appellants.

SMITH & SMITH and R. H. TOMLINSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this action the appellee, Smith, sought to subject to the payment of a judgment in his favor against appellant B. F. Patton's land the title to which was in the wife of appellant. The lower court granted the relief sought, and this judgment we are asked on this appeal to reverse.

There is no serious dispute as to the facts. In 1892 appellant and his wife purchased from Robinson a tract of land in Garrard county, Ky., containing 253 acres, for the sum of $10,600. The title was made to the wife, who paid $7,000 of the purchase price in cash with her own money. For the balance of the purchase price two notes were executed for $1,828, due in one and two years from date. In 1897 they bought 82 acres of land from McGrath for $4,000, one-third of which was paid in cash, and for the balance two notes of equal amounts, due in one and two years, were executed. The title to this land was also conveyed to the wife. It is these two tracts of land that the lower court adjudged a lien upon to secure the payment of appellee's judgment, upon the ground that, excepting the $7,000 of her own money invested in the land, and about $1,200 yet due on the purchase price of the McGrath land, the remainder was paid by the labor, services, and good business management

of the husband. When the Robinson land was purchased they moved on it, and engaged in the business of farming; and the balance due on that tract, as well as the purchase price of the McGrath tract, except the amount yet due, was paid with the proceeds of crops and stock from these farms. Patton was an industrious, thrifty, money-making farmer, and was assisted in the management of the farm by his sons, who were industrious and prudent young men. They raised large crops of hemp, tobacco, corn and other produce, and handled and fed mules, cattle, sheep, and hogs, and in their various operations were very successful. The wife took no part in the conduct or management of the farm, leaving this entirely to her husband, who did all the buying and selling, and in other respects conducted the farm as if it were his own. The accounts in the banks in which they did business were kept in the name of the wife, but all the transactions were conducted through Patton, who deposited the money and drew it out on checks in the name of his wife, but signed by him. The two tracts of land when purchased cost approximately $40 per acre, but when the judgment appealed from was rendered they were worth $80 per acre. This great increase in the value of the land was due to the natural enhancement in the value of land generally in the neighborhood where this land was located, and also to the fact that it was well and prudently taken care of. In May, 1908, when Mr. Patton gave his deposition in the case, he testified that there was on the farm 51 head of cattle, worth about $32.50 apiece; that he had 27 or 28 head of horses and colts worth $2,200; 4 mules worth $550; 205 sheep and 200 lambs worth $3.50 apiece—makng the value of the stock in round numbers about $5,000. So that the value of the land is

now $26,800, and the personalty $5,000, making a total of $31,800. Assuming that the land purchased by Mrs. Patton with $7,000 is now worth $14,000, and that this should be deducted from the present value of the personalty and real estate, it would leave a balance of $17,800, which amount represents the value of the industry, energy, and skill of Mr. Patton during these years. He testified that his indebtedness at the time he gave his deposition was in round numbers $7,550. This, subtracted from the $17,800, would leave a balance of say $10,000. One thousand two hundred dollars of this indebtedness represents the balance of the purchase price due on the McGrath land; the remainder being incurred for borrowed money and other purposes. In estimating the profit made on the original purchase, counsel for appellant insists that the reasonable rental of the land purchased by Mrs. Patton should be taken into consideration, and that this rent ought to be deducted from the difference between the value of the estate at the time of the purchase of the Robinson tract and the value of of the real and personal estate now, upon the ground that the wife was entitled to the reasonable rent of her land, free from coercive subjection for the payment of her husband's debts.

Upon this state of facts the legal question arises, should this McGrath land, and so much of the Robinson tract as may be necessary, be subjected to appellee's debt? At the prevailing prices the McGrath land will sell for more than enough to satisfy this debt, after first paying the vendor's lien upon it of $1,200, and the judgment directs that this land be first sold. It is very clear that, as the land of the wife can not be subjected to the payment of the husband's debts, unless it has been set apart for that purpose in

the manner provided in the statute, neither can the rent received by her from the land be subjected by his creditors. But that question does not present itself in this case. There is no attempt here made to subject either the land bought by the wife or the rent of the same. The right of recovery is rested upon the ground that the property sought to be subjected was accumulated solely by the industry, energy, and skill of her husband; and, this being so, it is subject to his debts. As there can be no doubt, from an examination of this record, that much more property in value than is necessary to satisfy the appellee's debt was on hand when the judgment was rendered, and that it represented and was produced by the industry and good management of Mr. Patton, we see no escape from the conclusion that the judgment of the lower court was correct. There is no substantial difference between the facts of this case and those in Blackburn v. Thompson, 66 S. W. 5, 23 Ky. Law Rep. 1723, 56 L. R. A. 938. There the attempt was made to subject to the husband's debt a house and lot conveyed to the wife, upon the ground that it was purchased and paid for by the husband, and the title taken to the wife with the fraudulent purpose of cheating his creditors. The evidence disclosed that Blackburn, the husband, was an admirable business man, that he had entire charge of the business, and that the property purchased was paid for out of profits of the business, although it was conducted in the name of his wife. The court, in an opinion holding that the property was liable for the debts of the husband, said: "It was held in Gross v. Eddinger, 85 Ky. 168, 3 S. W. 1, 8 Ky. Law Rep. 829, where the facts were very similar to those in this case, that the husband's creditors were entitled to subject to the payment of

their debt a lot purchased with the profits of a business conducted by the husband as agent for the wife, the title to which was in the wife. And in Brooks, Waterfield & Co. v. Frisbie, etc., 99 Ky. 131, 18 Ky. Law Rep. 555, 35 S. W. 106, 59 Am. St. Rep. 452, it was held that the creditors of an insolvent husband were entitled to subject to the payment of their debts the increase in the value of the wife's property, which was chiefly due to the skill, energy, and labor of the husband. In Moran v. Moran, 75 Ky. 303, it was held that the creditors of an insolvent husband were entitled to subject all that he might be able to earn, in excess of what was necessary for the reasonable support of himself and family, to the payment of their debts, notwithstanding the fact that it had been invested in property in the wife's name. And the same ruling was followed in Edelmuth v. Wybrant, 53 S. W. 528, 21 Ky. Law Rep. 931." This case, and those cited in the quotation from it, are conclusive of the correctness of the judgment here appealed from.

It is also argued that the judgment is erroneous because the execution returned "no property found," and which was the basis of this action, did not follow the judgment. The facts are these: On March 28, 1892, Barnett procured a judgment against appellant Patton and the appellee Smith, who was his surety, for $1,200, with 6 per cent interest from the 1st day of April, 1887, until paid; and on the 1st day of March, 1893, appellee, as his surety in said judgment, was obliged to and did satisfy the same, by paying to the judgment creditor the sum of $1,421.06, which amount represented the judgment debt, less 13 per cent of it that was paid to the judgment creditor by the assignee of Patton between the date of the judgment and its payment by the surety. Thereupon, the judgment

was assigned to the surety. When the surety came to have the execution that is the basis of this action issued upon this judgment, the execution specified as the amount to be collected under it the sum that he had paid, viz., $1,421.06, with interest from March 1, 1893. When the surety satisfied the judgment, Ky. Stats., 1903, section 4666, gave him the right to control the judgment for his own benefit, and to have execution issued thereon. It provides, in part, that: "If the surety pays the whole or part of a judgment, he shall have a right to an assignment thereof from the plaintiff or the plaintiff's attorney, in whole or in part; and when the plaintiff has been fully satisfied, such assignment shall give him the right to sue out or use any existing execution, or otherwise control the judgment for his own benefit against the other defendants, so far as to obtain satisfaction from the principal for the whole amount so paid by the surety with interest." It will be observed that the statute gives to the surety the right to so control the judgment as "to obtain satisfaction from the principal for the whole amount so paid by the surety with interest;" the purpose of the statute being to afford full relief to the surety by enabling him to collect the whole amount paid with interest thereon. If the surety could only issue an execution for the sum specified in the judgment, it might not afford him full satisfaction for what he had paid, and so he may have execution issued for the sum actually paid by him with interest thereon from the date of payment. This case furnishes a good illustration of the necessity for permitting the surety to have execution issued for the amount paid by him with interest, although in this particular the execution may not follow the judgment. If Smith could only have execution issued for the amount of

the judgment, or $1,200, with interest from April 1, 1887, he could only collect that sum from Patton; but this would not fully reimburse him for what he had paid, as he would lose the interest on $221.06, the difference between the principal sum for which the judgment was rendered and the amount paid by him in satisfaction of it. So that there was no error in the execution.

The statute of limitations is also relied on in the answer, but this point is not pressed by counsel for appellant in his well-considered brief. If Smith had not obtained an assignment of the judgment, then his right of recovery against Patton would be upon an implied promise to pay, and be barred by the 5-year statute of limitations; but, as he obtained an assignment of the judgment, he was substituted to all the rights of the judgment creditor, and the 15, and not the 5, year statute applied. Joyce v. Joyce, 1 Bush 474; Duke v. Pigman, 110 Ky. 756, 62 S. W. 867, 23 Ky. Law Rep. 209.

There being no error in the judgment, it must be affirmed.