CASE 26—ACTION BY R. S. GUTHRIE AGAINST B. F. HILL
AND WIFE.—May 5, 1910.

## Guthrie v. Hill & Wife.

Appeal from Henry Circuit Court.

CHARLES MARSHALL, Circuit Judge.

Judgment for defendant Edmonia Hill, and plaintiff appeals.—Affirmed.

1.  Fraudulent Conveyance—Property of Married Woman—Interest of Husband—Presumption—Burden of Proof.—Under Weissinger Act 1894 (Acts 1894, c. 76), conferring on a married woman the right to hold all her real estate to her separate use free from the debts of her husband, a creditor of a husband seeking to subject the property of the wife to the husband's debts, as having been acquired in fraud of his rights, must allege and prove the fraud; there being no longer any presumption that the husband is entitled to the money of which his wife is possessed during coverture.

2   Husband and Wife—Property of Wife—Subjection to Husband's Debts.—Where a debtor's wife purchased property with her own funds, which was rented to tenants, and the property she owned was the natural appreciation in the value of the property, the husband merely having advised with his wife in regard to the purchase and sales which she made, and having assisted her in attending to the details thereof, no part of the property was subject to his debts.

W. O. JACKSON for appellant.

MOODY & BARBOUR for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

On January 19, 1892, appellee B. F. Hill executed to appellant, R. S. Guthrie, his promissory note for

$900, due in one year, with interest from date. On December 30, 1893, there was paid on the note $89.60. On December 5, 1908, appellant brought suit on the note, and judgment by default was rendered in his favor. Thereafter execution was issued on the judgment and returned "no property found." On July 24, 1909, a petition in equity was filed in the Henry circuit court against appellee B. F. Hill and his wife, Edmonia Hill, charging that Mrs. Hill was claiming and was in possession of a house and lot in or near Newcastle and three tracts of land in Henry county, and that said property was wrongfully held by Mrs. Hill; that the purchase price thereof had been paid by appellee B. F. Hill, and the title thereto fraudulently placed in Mrs. Hill for the purpose of defrauding the creditors of appellee B. F. Hill. Thereafter an amended petition was filed, which contains an accurate description of the property sought to be subjected to the payment of appellant's debt. Appellees, B. F. Hill and Edmonia Hill, filed separate answers traversing the allegations of the petition. No affirmative matter was set up. Upon the issues thus formed, proof was taken and the case submitted. Thereafter judgment was entered dismissing appellant's petition as to Mrs. Hill, and awarding her costs. The action as to B. F. Hill was continued. From this judgment this appeal is prosecuted.

The record discloses the following facts: After the creation of the debt in controversy, Mrs. Hill made $500 in business. This, together with some money which she borrowed, was invested in the Webb farm near Newcastle. This farm was subdivided and sold out in small parcels. By the natural increase in value Mrs. Hill made a profit out of the transaction amounting to about $7,500. After some lots had been sold

and part of the purchase price paid thereon, the remainder of the Webb land was used as a basis of credit, and by mortgaging that Mrs. Hill was able to buy other land. She first bought of John Dickson a farm known as the "Richard Gains' farm," agreeing to pay therefor the sum of $4,000. In order to raise the purchase money, she mortgaged the remainder of the Webb farm and the Gains' farm to the Campbellsburg Bank. The Gains' farm was subdivided and sold in separate tracts, and a profit realized thereon. Afterwards she bought a house and lot in Newcastle, agreeing to pay therefor $1,500 and to assume certain mortgages on the property. She paid the $1,500 out of the money realized on the sale of the Gains' farm, and the mortgages now on the property amount to $2,200. Mrs. Hill next bought a farm called the "Jesse farm." For this she agreed to pay $12,000. Part of this land was sold, and she realized from the sales the sum of $10,378.75. On the remaining part of the farm there is still a mortgage for $2,000. She afterwards bought the Bruce farm, consisting of 116 acres. It was mortgaged at the time. She then sold 48 acres of this farm for $4,000, and used the proceeds to reduce the mortgage. On the remainder of this farm there is a mortgage for $2,200. Mrs. Hill recently bought a tract of land for $1,800. She did not pay the purchase price, but executed a mortgage on the land purchased and also on the Bruce land to secure the purchase price. According to the estimate made by counsel for appellee, Mrs. Hill is worth, after the payment of her debts, about $3,600. Of this sum she recently inherited $1,000. This would leave to her after payment of all her debts, a net sum of $2,-600. Counsel for appellant estimates the value of her property to be $7,000 or $8,000, but in the esti-

mate so given he does not state whether she is worth that sum after the payment of her debts. Estimating Mrs. Hill's property, however, by the record, it is evident that she is not worth exceeding $5,000. Deducting the $1,000 recently inherited, we have $4,000 left as a profit on her investments. Aside from the depositions of two parties, who stated that they made their rent contracts with appellee Hill, the only proof taken was the deposition of B. F. Hill. According to his evidence, he merely advised with his wife in regard to the sales of property, and assisted her in closing up the transactions. He never cultivated any of the land himself. He simply rented it to tenants on shares upon the usual terms. He never performed any labor himself upon the farms. It is not shown that any of the money realized from crops raised on the farms is now represented in the property which Mrs. Hill owns. On the contrary, the property she has accumulated is the result of the natural appreciation in price. Indeed, the profit which she realized out of the sale of the Webb farm alone represents more than the amount of property which she now has. For eight years of the time during which her property was accumulating B. F. Hill was county judge, and made from $950 to $1,200 a year. Not a dollar of this money was invested in any of the property which his wife bought. It all went into the maintenance of his family and the education of his children. Besides this, a large portion of Mrs. Hill's property was used for the same purpose. In addition to this, she actually paid off a large amount of her husband's indebtedness.

It is first insisted by counsel for appellant that under the authority of Treadway v. Turner, 10 S. W. 816, 10 Ky. Law Rep. 950, and other cases to the same

effect, it was necessary for Mrs. Hill to allege that she paid for the land with money to which she was entitled in her own right, and that, in the absence of such allegation, the presumption was that she paid for the land with money to which her husband was entitled. In this and the other cases relied upon, with the exception of Sikking v. Fromm, 112 Ky. 773, 66 S. W. 760, 23 Ky. Law Rep. 2138, the facts arose prior to the passage of the Weissinger act of 1894 (Acts 1894, c. 76). Before the passage of that act, the presumption was that the husband was entitled to the money that his wife might be in possession of during coverture, unless it was shown that she held the property as a separate estate. The burden was upon her to allege and establish this fact. Since the passage of the Weissinger act, however, no such presumption arises. By the express provision of that act a married woman now holds and owns all her estate, to her separate and exclusive use, and free from the debts and control of her husband. Under this act the wife has the same right to own property and make money as has her husband. If a creditor seeks to subject her property to the payment of her husband's debts, on the ground that it was acquired in fraud of his rights, he must allege and prove facts showing such fraud. It is no longer necessary for the wife to allege affirmatively that the property which stands in her name is her separate property. The statute makes it so. All that the wife has to do is to deny the allegations of fraud. If the husband's creditor fails to show fraud, he cannot subject her property to the husband's debts. The case of Sikking v. Fromm, 112 Ky. 773, 66 S. W. 760, 23 Ky. Law Rep. 2138, which announces a contrary doctrine, is overruled. But it is insisted by counsel for appellant that the facts of this case

bring it within the rule laid down by this court in
Blackburn v. Thompson, 66 S. W. 5, 23 Ky. Law Rep.
1723, 56 L. R. A. 938, and Patton's Ex'or v. Smith,
130 Ky. 819, 114 S. W. 315, 23 L. R. A. (N. S.) 1124.
In the Blackburn v. Thompson Case the facts were as
folows: The husband contracted a debt in the state of
Illinois, and shortly thereafter moved to Kentucky,
where he erected a brick dwelling house, and con-
ducted a saloon business in the name of his wife. He
was an admirable business man. He had entire
charge of the business. The wife borrowed the
money to start the business, and the property sought
to be subjected was paid for out of the business. This
court held that the property could be subjected to the
payment of the husband's debt, because it was accu-
mulated chiefly, if not solely, by the labor, industry,
and intelligent supervision of the husband. In the
case of Patton's Ex'or v. Smith, supra, Patton
bought the land, in which $7,000 of his wife's money
was invested. He moved on it, and together with his
two sons spent his whole time cultivating the same.
He was an industrious, thrifty, money-making farm-
er. He and his sons raised large crops of hemp, to-
bacco, corn, and other products. They handled and
fed mules, hogs, cattle, and sheep. The husband con-
ducted the farm as if it were his own. Other land
was bought and stock accumulated to the value of
$5,000. The value of the whole property was $31,800.
It was shown that the value of the land was doubled
from enhancement of prices, and the court first set
aside $14,000 as the value of the wife's property, and
concluded that the balance represented the skill, in-
dustry, and energy of the husband. From this sum
the debts due on the land were deducted, leaving a
net balance of $10,000. From this sum the court di-

rected the payment of the debt due the husband's creditors. In discussing the case this court said: "The right of recovery is rested upon the ground that the property sought to be subjected was accumulated solely by the industry, energy, and skill of her husband; and, this being so, it is subject to his debts." In using this language, however, the court did not mean to limit the right of recovery to those cases where the property sought to be subjected was accumulated solely by the industry, energy, and skill of the husband. The court approved the doctrine announced in Brooke, Waterfield & Co. v. Frisbie, 99 Ky. 131, 35 S. W. 106, 18 Ky. Law Rep. 55, 59 Am. St. Rep. 452, where it was held that the creditors of an insolvent husband were entitled to subject to the payment of their debts the increase in the value of the wife's property which was chiefly due to the skill, energy, and labor or her husband.

An examination of the facts of this case heretofore set forth will show a wide difference between them and the facts of the cases above referred to. In this case the husband did not engage in farming; nor did he cultivate any portion of his wife's land. The land was rented to tenants on the share. It is not even shown that any profits were derived from such contracts. On the contrary, the proof shows that whatever property Mrs. Hill now has is the result not of the labor, skill, and industry of her husband, but of the natural appreciation in the value of the property which she purchased. Indeed, the profit which she realized out of the sale of the Webb land alone, which was divided up and sold in small parcels, is of far greater value than all the property which she now has after the payment of the indebtedness due thereon. That B. F. Hill may have advised with his wife

Guthrie v. Hill & Wife.

in regard to the purchases and sales which she made, and may have assisted her in attending to the details thereof, is not sufficient to show that the property which she now has was accumulated chiefly by his industry, energy, and skill.   That being the case, we conclude that the facts of this case do not bring it within the rule laid down in Blackburn v. Thompson and Patton's Ex'or v. Smith, supra.   On the contrary, we are of the opinion that the property now owned by Mrs. Hill, and which is sought to be subjected in this action, represents nothing in excess of the natural appreciation in value of the lands which she purchased.   That being true, it cannot be subjected to the payment of her husband's debts.

Judgment affirmed.