## Ford Lumber & Manufacturing Company v. Curd, et al.

(Decided November 26, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. **Husband and Wife—Conveyance to Wife to Defraud Creditors.**—
Where the husband is engaged in a successful and prosperous
business in which he is able to accumulate considerable estate,
he will not be permitted to invest the accumulations in property
in the name of his wife and thus defeat his creditors.

2. **Husband and Wife—When Husband May Give His Earnings to
His Wife Without Fraud on His Creditors.**—Where the earnings
of the husband are not more than reasonably sufficient to comfort-
ably provide for and support his family, hire household labor, and
furnish his wife and children with some of the luxuries and pleas-
ures of life, he may give his earnings to his wife, and if she, by
close economy in the management of her personal and household
affairs, can save enough from the earnings to buy a home, his
creditors cannot take it from her.

H. P. BINKLEY for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellant company to
subject to the payment of a debt it had against the ap-
pellee, John P. Curd a house and lot conveyed to the
appellee, Anna Curd, his wife, upon the ground that the
conveyance was fraudulent and made for the purpose
of defeating the collection of its debt. The lower court
dismissed the suit, and to reverse that judgment this
appeal is prosecuted.

The debt sued on by the appellant was created by
John P. Curd some time prior to February 10, 1908, on
which date he executed to the company his note for the
amount due. In August, 1908, the property sought to be
subjected was conveyed to Anna Curd, the consideration
being $1,150. Of this amount $100, perhaps something
over, was paid on the consideration of the vendor, and
a few days after the conveyance was made the Home &
Savings Fund Co. advanced to the Curds about $1,000,
to satisfy the remainder due on the purchase price and
took a mortgage on the property. At the time, or per-
haps before this transaction occurred, John P. Curd had

become a member of this Home & Savings Fund Co., the dues in which were $2.30 a week, and the purpose of obtaining the money from the Home & Savings Fund Co. was to enable the Curds to pay off the mortgage debt in weekly installments. The evidence shows that the first payment, of about $100, made to the vendor, was paid out of money that Mrs. Curd had received from the estate of her parents, but the weekly payments of $2.30 to the Home & Savings Fund Co. were paid by Mrs. Curd out of money given to her by her husband.

The evidence further shows that Curd earned, from August, 1908, to August, 1911, when the suit was brought, about $20 a week, and that he gave the money so earned to his wife, who, with this money, in addition to $4 a week received from a boarder, paid all the expenses of the house and family, which consisted of herself and husband and two children, and was able to save out of it a few dollars each week. It is also shown that she was an industrious, thrifty, economical woman, and that she did the cooking for the family and all the household work, except occasionally when she had a young girl to help her.

On these facts it is the contention of counsel for appellant that as the weekly payments made on the house were, in fact, made by Curd out of money earned by him, the property should be subjected to the debt sued on; while counsel for appellee insist that Curd had the legal right to give to his wife, for the support of his family, the wages he received, and if she saved enough out of this to pay the weekly dues to the Home and Savings Fund Co., thus reducing the debt against the house, no fraud was practiced on the appellant, and it cannot subject the property to the extent of the payments so made in satisfaction of its debt.

As the evidence shows that Mrs. Curd paid, out of her own money, the initial payment on the property, there is of course no fraud attached to this feature of the case, and we may put it aside without further comment. The remaining question is, does the fact that the property was conveyed to Mrs. Curd, and the weekly payments made out of money earned by her husband and given to her, constitute such fraud, in the meaning of the law, as would authorize the court to subject the property to appellant's debt to the extent of the weekly payments? We think this question must be answered in the negative, as it was by the lower court.

The cases of Gross v. Eddinger, 85 Ky., 168; Brooks-Waterfield Co. v. Frisbie, 99 Ky., 125; Blackburn v. Thompson, Wilson & Co., 23 Ky. L. R., 1723, and Patton v. Smith, 130 Ky., 819, relied on by counsel for appellant, do not, in our opinion, support his contention that the appellant should succeed in this case. We approve of those opinions and the principles of law announced in them but they are plainly distinguishable from the case at bar.

In the Gross case the husband, by his exclusive business effort, accumulated in a few years three or four thousand dollars, which was invested in the name of his wife, and the court held, under the facts of that case, it was plainly the purpose of the husband to defraud his creditors by attempting to place the income from a profitable business, conducted by him, in the name of his wife and beyond their reach.

In the Brooks-Waterfield case, Frisbie, who was a successful and prosperous business man, accumulated several thousand dollars, in the course of a few years, and invested it in real estate in the name of his wife, and the court subjected, at the instance of his creditors, the property in the name of his wife, to the extent of three thousand dollars, to the payment of his debts.

In the Blackburn case the husband, who was conducting a profitable line of business, invested, in the name of his wife, some $2,500 realized from his business, and the court held that the scheme of permitting his wife to take the title to property that was paid for in this way by the husband was a fraud upon his creditors.

In the Patton case the husband, in a few years, by industry and business ability, accumulated several thousand dollars, with which land was bought and the title taken in the name of the wife, and it was held that the husband could not, by this method, defeat the claims of his creditors, and so much of the property as represented the result of his business capacity was subjected to the payment of his debts.

In all of these cases it appeared that the earnings or profits made by the husband were greatly in excess of the amount necessary to comfortably provide a home and support for his family, and the court in substance said, that a husband engaged in a successful and prosperous business, by which he was able to accumulate considerable estate, would not be permitted to invest his accumulations in property in the name of his wife, and

thus defeat his creditors. But we have here a very different state of case. Curd, with a wife and two children to support, was earning a salary of $20 a week, or $80 a month, not more than sufficient to provide for and support his family, if his wife had not been an industrious, economical, good housekeeper. If, in place of handing to his wife every week all of his meagre salary, Curd had seen proper, as many husbands do, to spend a part of the money in purchasing pleasures and comforts for himself and family, or if he had given the money to his wife and she had spent it, as many wives do, in extravagant living, his creditors could not have reached any part of it, because he would have been entitled to the $20 received each week, under the exemption laws of the State. But even if it was not so exempt, no court would have compelled him to set aside, out of this salary, a certain sum each week for the benefit of his creditors, or have required him to live more economically than he desired to, and in this way save a portion of his wages for his creditors.

Where the earnings of the husband are not more than reasonably sufficient to comfortably provide for and support his family, hire household labor, and furnish his wife and children with some of the pleasures of life, he may give his earnings to his wife, and if she is willing to deny herself the pleasures and little luxuries that she might have, and to dress plainly and live frugally and do her own cooking and household work in place of hiring help to do it, and by this close economy in the management of her personal and household affairs is able to save enough to buy an humble home, his creditors cannot take it from her. Anderson v. Mundo, 77 S. W., 926.

The judgment dismissing the petition is affirmed.