## Ratliff v. Williams.

(Decided April 12, 1918.)

### Appeal from Pike Circuit Court.

1. Fraudulent Conveyances—Suit by Creditor—Burden of Proof.— The burden of showing that a conveyance was made in fraud of creditors is on the creditor attacking the conveyance.
2. Fraudulent Conveyances—Evidence—Sufficiency.—In an action by an execution creditor against his debtor's son to subject the latter's land to the execution debt on the ground that the land was paid for by the debtor and conveyed to his son to defraud his creditors, evidence examined and held insufficient to support a finding in favor of plaintiff.

STRATTON & STEPHENSON for appellant.

CLINE & STEELE, A. F. CHILDERS, J. S. CLINE and AUXIER, HARMAN & FRANCIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

The only question on this appeal is whether A. S. Ratliff's interest in certain lands in Pike county was properly subjected to an execution debt in favor of U. K. Williams and against W. O. B. Ratliff, the father of A. S. Ratliff.

It appears that in the year 1891, U. K. Williams brought suit against W. O. B. Ratliff and attached the latter's property, and in the year 1893 obtained a judgment against W. O. B. Ratliff for the sum of $1,000.00 with interest from November 14, 1891, together with the costs of the action amounting to $16.85. The judgment was credited by the sum of $750.00 paid November 14, 1897. Thereafter an execution was issued on the judgment and returned no property found. This suit was brought against A. S. Ratliff, the son, and Mary E. Ratliff, the widow, of W. O. B. Ratliff, to subject certain lands to the execution debt on the ground that they had been paid for by W. O. B. Ratliff and had been conveyed to the defendants for the purpose of defrauding his creditors.

Briefly stated the facts are as follows: Prior to the year 1891, W. O. B. Ratliff was engaged in logging and merchandising. In the year 1891, he made an assignment to I. E. Gray for the benefit of his creditors. In a suit by the assignee against the Bank of Pineville and

other creditors, certain lands belonging to W. O. B. Ratliff were sold and were purchased by W. M. Connolly. Connolly's bid was assigned to Ben M. Williamson, who obtained a commissioner's deed and agreed to hold the property in trust for the creditors. At that time Williams released his attached lien on the property in consideration of the payment to him of $750.00 by W. J. Williamson, one of W. O. B. Ratliff's creditors. In the year 1900, Williamson entered into an agreement with W. O. B. Ratliff by which Ratliff was to act as his agent in disposing of the property and should have as his compensation all the property in excess of the sum of $3,800.00. It was further agreed that Ratliff should be discharged of all claims proven in the suit of I. E. Gray, Assignee, v. Bank of Pineville, etc., as well as of the claim of U. K. Williams. The contract also contained the provision that Williamson would make conveyances to the purchasers procured by Ratliff, in the event he approved of the sales. Pursuant to this agreement Williamson sold a portion of the lands to which he acquired title in the suit above referred to, to other parties for the sum of $1,123.86, and on March 16, 1903, conveyed to A. S. Ratliff an undivided one-half interest in the remainder of the lands. The consideration for this conveyance was $2,674.14, which was paid in cash and distributed to the creditors of W. O. B. Ratliff. It was also shown that A. S. Ratliff obtained the money to pay for the land on a note which he executed to the First National Bank of Pikeville with C. C. Bowles and James Hatcher as sureties. Hatcher and A. S. Ratliff both say that they formed a partnership under the firm name of A. S. Ratliff and Company, to carry on the timber business and that the business was conducted principally by James Hatcher. They further say that the business was prosperous and they made a profit of five or six thousand dollars, and that the money thus obtained was used to discharge the indebtedness at the bank.

There is nothing in the record to show any fraud on the part of Williamson or W. O. B. Ratliff in making the sale to A. S. Ratliff. The title to the property had passed out of W. O. B. Ratliff by virtue of the commissioner's sale. The title being in Williamson, he had the right to dispose of the property. It is not contended that the property was worth more than the purchase price. The evidence is clear that the purchase price was paid and

the only ground on which the land could be subjected to the payment of Williams' debt is that it was paid for by W. O. B. Ratliff. The burden of showing this fact was on Williams. Guthrie v. Hill, 138 Ky. 181, 127 S. W. 767. Instead of meeting this burden the uncontradicted evidence shows that the money was borrowed by A. S. Ratliff to pay the consideration and that the bank from which the money was borrowed was subsequently repaid by the proceeds from the partnership of A. S. Ratliff and Company. Under these circumstances, the mere inference deducible from the fact that A. S. Ratliff was a young man, and that his father was an old, experienced timber man and advised him in regard to the logging business is not sufficient to show that the property was paid for by the efforts of W. O. B. Ratliff, especially in view of the evidence that the partnership business was conducted principally by James Hatcher, an experienced timber man. We therefore conclude that the chancellor erred in subjecting the property in question to the payment of plaintiff's debt.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.