## Farmers' Bank of Fountain Run v. Hagan et al.

(Decided February 23, 1932.)

536

F. R. GOAD and N. G. GOAD for appellant.

N. F. HARPER for appellees.

Opinion of the Court by Creal, Commissioner—Affirming.

On October 24, 1924, J. S. Hagan and Jennie P. Hagan executed and delivered to the Farmers' Bank of Fountain Run a note for $2,500 bearing interest from date and, to secure the payment thereof, executed and delivered to the bank a mortgage on two small tracts of land containing 2.7 acres improved with a residence and store building.

On June 21, 1927, the bank instituted this action in equity against the makers of the note, asking judgment for the amount of the note subject to credit by $500 paid January 25, 1926, and by interest paid in full to the 24th day of January, 1927, and for the enforcement of its mortgage lien. It further alleged that the value of the real estate was less than the amount of its debt, interest, and the probable cost of the action and that the sale of the property and application of the proceeds to the payment of its debt would leave a substantial balance thereof unsatisfied. The petition made the necessary allegations and asked for a general order of attachment against the defendants. It alleged that J. S. Hagan owned two tracts of land aggregating about 125 acres which he and his wife mortgaged to the Federal Land Bank of Louisville to secure a note for $3,000 and that substantial sums had been paid on that note. It asked that the Federal Land Bank be required to assert any lien or claim it had against the land covered by the mortgage.

By answer and cross-petition, the Federal Land Bank set up its note and mortgage on the 125 acres of

land referred to in the petition and alleged that the remainder unpaid on its note was $2,849.17 with interest at 5½ per cent from May 1, 1927. It further alleged in its answer that J. S. Hagan was the owner of thirty shares of stock of the South Scottsville Farm Loan Association of a par value of $5 each, which were held as collateral to secure the payment of the note.

By answer and counterclaim, defendants J. S. Hagan and his wife, after traversing the allegations of the petition, affirmatively alleged that Jennie P. Hagan signed the note merely as surety and received no benefits whatever therefrom; that this was known to plaintiff; and that she was not liable for the payment of the note. It was further alleged that the store on the real estate covered by plaintiff's mortgage was destroyed by fire in January, 1926, and that J. S. Hagan received $1,000 in settlement of an insurance policy on the building; that he paid $500 of the insurance money received to plaintiff to apply on its note and with the permission and consent of plaintiff paid the remainder of the insurance money to his brother Jim Hagan on an unsecured indebtedness; that on November 28, 1925, and prior to the time the insurance money was paid to plaintiff and to his brother with plaintiff's consent, J. S. Hagan executed and delivered to Jennie P. Hagan, his wife, a deed for the 125 acres of land referred to in the petition and that she was and is the owner thereof and that same was not subject to the payment of plaintiff's demand; that plaintiff's attachment was casting a cloud upon her title which she is entitled to have removed. It was further alleged that an automobile taken under the attachment was not the property of J. S. Hagan but was the property of his wife.

At the January term, 1928, the court entered a judgment in favor of plaintiff for the sum of $2,000 as the balance due on the note with interest from January 24, 1927, and adjudged that the mortgage lien be enforced and that the two small tracts of land be sold and the proceeds applied on the payment of the judgment. The property was sold by the master commissioner and was purchased by plaintiff for the sum of $1,300.

By amended answer, defendants reiterated the allegation that the 125-acre tract had been conveyed to Jennie P. Hagan for a valuable consideration, but asked that in the event the court should not so hold that it be

adjudged that J. S. Hagan was entitled to a homestead therein.

By reply, plaintiff traversed the answer and counterclaim and alleged that the conveyance from J. S. Hagan to his wife was fraudulent and was made for the purpose of cheating, hindering, and delaying his creditors.

On June 21, 1927, the Farmers' Bank of Fountain Run instituted another action against J. S. Hagan and Jennie P. Hagan in which it joined the Federal Land Bank of Louisville as a defendant. It alleged that on April 1, 1922, J. S. Hagan executed and delivered to the Bank of Fountain Run a note for $1,030 with interest from date and that thereafter and in due course the note was transferred to and became the property of plaintiff. It asked for judgment in the amount of the note subject to credit by $455.10 paid October 25, 1923, $66.83 paid December 29, 1924, and $33.91 paid May 5, 1926. The petition alleged the necessary grounds and asked for a general order of attachment against the property of J. S. Hagan, including the 125 acres of land hereinbefore referred to, and asked that the Federal Land Bank assert any claim it had to the land. By answer the Federal Land Bank again asserted its mortgage lien on the 125-acre tract.

J. S. Hagan and his wife by answer and counterclaim traversed the allegations of the petition and made the same allegations with reference to the conveyance of J. S. Hagan to Jennie P. Hagan of the 125-acre tract as was made in the answer in the first suit. Issues were completed by appropriate pleadings and the two actions consolidated.

On final hearing of the consolidated actions, the court gave plaintiff judgment for the amount of the note sued on in the last action subject to the credits hereinbefore enumerated and sustained the attachment issued in both cases. It was further adjudged that the deed by which J. S. Hagan undertook to convey to his wife the 125 acres of land was not fraudulent but was in reality only a mortgage; that by reason thereof Jennie P. Hagan had a lien upon the real estate for the sum of $880 with interest from January 6, 1915; and that her lien was superior to the lien created by plaintiff's attachment. The Federal Land Bank was adjudged to have a first lien on the 125 acres of land to secure the payment of the balance due on its note. It was ordered and directed

that the stock in the Farm Loan Association and the 125 acres of land be sold and the proceeds applied to the satisfaction of the mortgage and attachment liens in the order indicated. It was further adjudged that up to the time of the judgment, each party should pay his own costs, but that the costs accruing thereafter should be paid out of the proceeds of the sale.

The land was sold as directed by the judgment and plaintiff became the purchaser at the sum of $4,700. Thereafter it was adjudged that the judgment in favor of Jennie P. Hagan be credited by the value of the automobile as fixed by appraisement and also that plaintiff as purchaser of the land was entitled to the crops on the farm which were not severed from the ground on or before the 19th day of September, 1930, the date of the confirmation of the sale to it.

Plaintiff has prosecuted an appeal from all parts of the judgment adverse to it. Defendants J. S. Hagan and wife excepted to certain parts of the judgment and prayed an appeal, but none has been prosecuted.

As grounds for reversal of the lower court's judgment it is argued by appellant's counsel that the conveyance from J. S. Hagan to his wife was fraudulent and should have been set aside and that the court erred in adjudging it to be a mortgage to secure the payment of the judgment in favor of Mrs. Hagan; and further that the court erred in not crediting the judgment in favor of Mrs. Hagan by the value of the automobile transferred to her by her husband as of the date of the transfer instead of the value fixed by the court from the proof which is also the same amount fixed by appraisement.

The recited consideration in the conveyance from J. S. Hagan to his wife is as follows:

"That said party of the first part for and in consideration of the sum of $880 cash as being her part received from her father, A. P. Hughes' estate $250 for one mare sold to B. D. Hughes $425 for other stock of hers sold off the premises, and other valuable considerations the receipt of which is hereby acknowledged. . . ."

There is produced in evidence a note from J. S. Hagan to Jennie P. Hagan dated January 6, 1915, for the sum of $905.30 due one day after date, and it is shown by the evidence that this note was given to Mrs. Hagan

for money she had received from her father's estate and had turned over to her husband on the date the note was given. Her share in the proceeds of the real estate owned by her father amounted to $880, and the additional $25.30 going to make up the amount of the note was also money which she had received from her father's estate and had likewise turned over to her husband. It is also shown in evidence that Mrs. Hagan's father gave her a mare and cow; that Mr. Hagan sold the mare for $250 and the cow and progeny of the cow and mare for the sum of $425, which sums were retained by him. There is also evidence to the effect that prior to his death, Mrs. Hagan's father gave to each of his children $100 and that Mrs. Hagan turned this sum over to her husband, but no mention is made of this in the deed. The evidence shows that J. S. Hagan purchased an automobile and took a bill of sale to himself but thereafter in August, 1926, he executed and delivered to Mrs. Hagan a bill of sale for this car. The evidence indicates that this was a gift and that there was no consideration for the transfer.

There is ample evidence in this case to sustain the chancellor's finding that Mrs. Hagan had a valid and subsisting debt against her husband to the extent of $880, and we are not prepared to say that he would not have been warranted in giving her a lien for a greater sum than he did.

Ordinarily, where a conveyance from an insolvent husband to his wife is attacked as fraudulent by his creditors, the burden is upon her to show that the transaction was free from fraud. Mrs. Hagan successfully met that burden, as the overwhelming weight of the evidence is to the effect that her husband received money from her which he promised to repay, and as an evidence of his indebtedness executed and delivered to her a note. It is also shown that when the conveyance was made some years later, she surrendered the note to him.

Keeping in mind that this conveyance is not challenged as preferential but is attacked solely on the ground that it is fraudulent, we shall confine ourselves entirely to that ground of attack.

In the case of Short v. Tinsley, 58 Ky. (1 Metc.) 397, 71 Am. Dec. 482, it is said:

"But in equity, when a security or conveyance is set aside as constructively fraudulent, it is upheld

in favor of one not guilty of any actual fraud to the extent of the actual consideration, and is vacated only as to the excess."

As a general rule, pre-existing indebtedness is a sufficient consideration to uphold a conveyance given in payment of or as security for such indebtedness; and such a conveyance in payment of bona fide antecedent indebtedness should not be set aside unless the fair and reasonable value of the property is greatly in excess of the amount of the indebtedness. 27 Corpus Juris, 534, and cases cited therein.

While a conveyance from a husband to a wife should be subject to the most careful and searching scrutiny to prevent the perpetration of fraud against other creditors, the wife who holds a bona fide indebtedness against her husband has the same legal rights as any other creditor. In the absence of fraud, a conveyance to her by the husband in satisfaction of or as security for such indebtedness will be upheld when attacked as fraudulent, even though it may be preferential. 12 R. C. L. 589.

In the case of Winfrey's Trustee v. Winfrey, 150 Ky. 138, 150 S. W. 42, 45, this court said:

"It is frequently difficult to prove fraud, save by circumstantial evidence; and where the parties, charged with the fraudulent collusion, occupy the position of parent and child, brother and sister, or husband and wife, . . . fact of relationship of the parties, and loss to the creditor, is not sufficient to establish fraud. The presumption of integrity of purpose in their transactions is not overcome, except by direct or circumstantial proof sufficient to produce a conviction of the existence of fraud. Redd v. Redd, 67 S. W. 367, 23 Ky. Law Rep. 2379; Wiggington v. Minter, 88 S. W. 1082, 28 Ky. Law Rep. 79; Treadway v. Hogg (Ky.) 119 S. W. 742."

In the case of Leitchfield Milling Co. v. Rogers et ux., 239 Ky. 484, 39 S. W. (2d) 961, 962, the opinion, after adverting to the rule that conveyance between husband and wife or other persons bound together by ties of kinship should be closely scrutinized and that courts should be alert to detect any device or subterfuge to defeat the rights of creditors, continuing says:

"Nevertheless business transactions between husband and wife are not forbidden, and, if the facts

show a good faith transaction, not inimical to the rights of creditors, justice dictates that it be upheld. Anderson v. Mundo, 77 S. W. 926, 25 Ky. Law Rep. 1644; Clark v. Meyers, 68 S. W. 853, 24 Ky. Law Rep. 380; Ford Lumber & Manufacturing Co. v. Curd, 150 Ky. 738, 150 S. W. 991, 43 L. R. A. (N. S.) 685; Dunn v. Shearer, 14 Bush 575; Casebier v. Casebier, 193 Ky. 490, 236 S. W. 966; Davis v. Francis, 60 S. W. 931, 22 Ky. Law Rep. 1618; Hayner & Co. v. McKee, 72 S. W. 347, 24 Ky. Law Rep. 1871.''

See also Bishop v. People's Deposit Bank, 210 Ky. 396, 275 S. W. 865; Granberry et al. v. Pierce, 151 Ky. 794, 152 S. W. 938; Seiler v. Walz, 100 Ky. 105, 29 S. W. 338, 339, 31 S. W. 729, 17 Ky. Law Rep. 301.

In the latter case it appears that a conveyance from father to son was attacked as fraudulent, but the court held that to the extent the father was indebted to the son, there was no fraudulent intent within the meaning of the statute under which the action was brought. In that case, as in this, the conveyance was not attacked as preferential. In the course of the opinion, it was said:

''By preferring the son as a creditor, the father committed no actual fraud on his other creditors. It was commendable in him to pay his debts, and he might prefer one creditor over another without committing actual fraud, or doing aught that is denounced in the statute relied on by the appellee. Relief from such a preference must be sought under another and different statute.''

In that case the consideration for the conveyance was partly in cash and the remainder in satisfaction of an existing indebtedness. The court refused to uphold the deed in so far as the cash consideration was concerned, but held that the deed should stand as security to reimburse or indemnify the son as a bona fide creditor to the extent of his debt.

Applying the authorities cited to the proven facts and circumstances in this case, we are constrained to hold that the court did not err to the prejudice of appellant's rights in adjudging that Mrs. Hagan had a lien on the land to secure the indebtedness mentioned in the judgment.

There is no merit in the contention that the judgment in favor of Mrs. Hagan should be credited by the value of the automobile at the time it was transferred to her instead of the value fixed by the court from the evidence. Obviously the only relief appellant was entitled to on this score was to have the transfer set aside and the automobile sold to satisfy its attachment lien, and it could only profit to the extent of the value of the automobile or to the amount that it brought at a sale under the attachment.

Judgment affirmed.