Joyce C. McMURRAY, Individually and as
Admrx., etc., et al., Appellants,

v.

Roger McMURRAY, Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1966.

Lester Helm Spalding, Robert M. Spragens, Lebanon, for appellants.

E. E. Hubbard, Fulton & Hubbard, Bardstown, S. Russell Smith, Smith & Smith, Louisville, for appellee.

PALMORE, Chief Justice.

In 1954 Billy McMurray bought a farm for $15,000. A substantial portion of the purchase price was loaned to him by his father, Roger McMurray, the appellee. The conveyance was made to Billy and his wife, Joyce, as tenants by the entirety. Joyce did not furnish any part of the consideration. Billy died in 1958 owing Roger $17,000. Roger brought this action in 1961 to recover the debt, to set aside as fraudulent under KRS 378.020 the 1954 conveyance of an interest in the farm to Joyce, and to have the farm subjected as far as necessary to the satisfaction of his claim. He alleged and the trial court found as a fact that he never knew the title had been taken jointly until shortly after Billy's death. Joyce, individually and as administratrix of Billy's estate, and her children appeal from a judgment sustaining Roger's claim, declaring the deed void as between Joyce and Roger to the extent of $12,200 plus interest, awarding Roger a lien to secure that amount, and ordering the property sold to satisfy the lien.

The questions raised on the appeal are whether and to what extent KRS 378.020 is properly applicable to the 1954 transactions and whether relief under that statute is barred by the 5-year statute of limitations, KRS 413.120(12).

At the time of the 1954 transactions Billy and Roger were partners in the operation of a dairy on Roger's farm. Billy kept the books, and there can be no doubt that a close and confidential relationship existed between the father and son. When Billy decided to buy the farm that is the main subject of this proceeding, Roger loaned him $3,800 by check to make up the down payment of $5,000. This was done on April 30, 1954, the day the deed was executed. After the application of certain credits in favor of Billy, his net indebtedness to Roger immediately following delivery of the deed was $2,948.31.

Roger did not make any inquiry with reference to the terms of the deed, nor did he take a note or mortgage from Billy. Whether the conveyance ran to Billy and Joyce or to Billy alone did not occur to him.

In the deed a lien was retained in favor of the seller to secure payment of the prin-

cipal balance of $10,000 due and payable on or before June 15, 1954. On June 8, 1954, Billy gave the seller a personal check in the amount of $10,000 and recorded the deed. He had only $181.37 in his bank account at the time, so he told Roger he had given the $10,000 check and on June 10, 1954, Roger covered it by causing $10,000 to be transferred from his account to Billy's account at the bank. Again it was a simple loan and there was no note or mortgage between Billy and Roger. Immediately following this transaction Billy's net indebtedness to Roger was $12,659.64. The debt was later reduced to $12,200 before other transactions increased it to the amount owing at the time of Billy's death in 1958. The seller released his vendor's lien by marginal indorsement on June 12, 1954.

■ Taking up first the applicability of KRS 378.020,[1] we are of the opinion that the conveyance of an interest to Joyce without consideration was avoidable as to Billy's then existing debts. Having been made by Billy's procurement, the conveyance was the same as if it had been made directly from him to her. Hamilton v. Preston, 166 Ky. 61, 178 S.W. 1146, 1149 (1915); Kincaid v. Brown's Estate, Ky., 262 S.W.2d 468, 473 (1953).

■ It is contended, however, that even so the avoidance cannot protect the subsequent loan of $10,000 on June 10, 1954, because that indebtedness did not exist at the time of the conveyance. In the absence of fraud this probably would be true if the $10,000 had not been applied to increase the value of Joyce's equity in the property. Combs v. Poulos, 241 Ky. 617, 44 S.W.2d 571, 573 (1931). But the rule is otherwise when the money is used to increase the salable value of the property by reduction or discharge of a lien indebtedness against it. Pierce v. J. B. Pierce's Trustee in Bank-

ruptcy, 238 Ky. 495, 38 S.W.2d 254, 260 (1931). The net result of the transaction was to increase the value of Joyce's interest in the property. That it was done in two stages instead of one cannot make any sensible distinction in principle. We hold, therefore, that the chancellor was correct in determining that the conveyance to Joyce was voidable to the extent necessary to cover so much of the two loans as remained unpaid.

■ There was ample evidence to sustain the chancellor's finding that Roger did not in fact know until after Billy's death that the title had been taken in the names of both Billy and Joyce, and as we have already suggested, it is equally beyond question that the relationship between Billy and his father was a confidential one.

■ KRS 413.120(12) limits the commencement of an action for relief on the ground of fraud to five years after accrual of the cause of action. KRS 413.130(3) provides that such a cause does not accrue until discovery of the fraud. Unless the recording of the deed in June of 1954 constituted notice to Roger, his cause of action did not accrue until 1958. It was held in Lemaster v. Caudill, Ky., 328 S.W.2d 276, 282 (1959), that where a confidential relationship exists and there is fraud in the inception, mere recordation of the instrument is not sufficient notice to begin the running of the statute. Counsel for Joyce seek to distinguish Lemaster on the ground that it involved fraud in the inception of the contract, but obviously the presumptive fraud in this case also existed from the inception of the transactions sought to be avoided. The only distinction between the two cases is that in Lemaster the fraud was actual whereas in this instance it is constructive, or presumed by law, in spite of both Billy's and Joyce's actual innocence of

1. "Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors, but shall not, on that account alone, be void as to creditors whose claims are thereafter contracted, nor as to purchasers from the debtor with notice of the voluntary alienation or charge."

any fraudulent knowledge or intent. Cf. Combs v. Poulos, 241 Ky. 617, 44 S.W.2d 571, 573 (1931). That, we think, is a distinction without a difference. The rationale of the actual notice requirement is that persons in a confidential relationship do not have the reason or occasion to check up on each other that would exist if they were dealing at arm's length. This principle is equally applicable whether the fraud be actual or statutory.

▇ We affirm the chancellor's conclusion that the cause of action accrued in 1958, when Roger actually learned that the conveyance had been made to Billy and Joyce or the survivor.

The judgment did not mention and the briefs do not discuss the question of dower. The value of the property may now be such that it makes no difference.[2] Nevertheless, as the farm is to be sold to satisfy the lien claim of $12,200, and as Joyce's purpose in this proceeding is to protect and preserve that to which she is entitled, we think a determination of whether she is entitled to dower is indispensable.

Under circumstances in which the title being divested from the wife came directly from a third party, and not from the husband himself, some courts have held that there was never a legal or equitable estate in the husband out of which dower could be carved. In short, if the husband never had seisin or a right to seisin there could be no dower.[3] See annotation, "Right to dower upon avoidance of conveyance as against creditors," 32 L.R.A.,N.S., 103 (1910). On the other hand, it was held in Belford v. Crane, 16 N.J.Eq. 265, 84 Am.Dec. 155, 162 (1863), that the wife was in effect a trustee for the husband's creditors and, there being no actual fraud on her part, was entitled to dower to the same extent as if the legal title had been vested in the husband.

▇ The rule that would divest the wife's title without securing her dower rests

upon the strictest of hypertechnicality, and is completely at odds with common sense. The purpose of the fraudulent conveyance statute, KRS 378.020, is to put the husband's creditors (as of the time of the conveyance) in the same position they would have enjoyed had the title remained or been taken in the name of the husband. Had the title been so vested, the wife's inchoate dower would have attached. We accept as sound the result in Belford v. Crane, 16 N.J.Eq. 265, 84 Am.Dec. 155, 162 (1863), and hold that if a creditor of the husband invalidates under KRS 378.020 a conveyance to the wife, she must be allowed dower with the same priority as if the conveyance had been made to the husband (or, if the conveyance ran from husband to wife, as if the conveyance had never occurred).

▇ What we have said does not mean that a vendor's lien would be subject to dower. "The superiority of a vendor's lien over the right of dower is well settled." Chalk v. Chalk, 291 Ky. 702, 165 S.W.2d 534, 538 (1942). "The wife's right of dower, is subordinate to the vendor's lien for the purchase money, because the lien is coeval with the husband's right to the land, and he acquires his title subject to the lien * * * But where no lien for the purchase money exists, and the husband acquires a clear and unencumbered title to the property, the right of the wife to dower is not affected by the fact that the original consideration has not been actually paid." McClure v. Harris, 51 Ky. (12 B.Mon.) 261, 264–265 (1851).

▇ Although the vendor from whom Billy purchased the property retained a lien which later was satisfied through Billy's use of Roger's money, the lien nevertheless was extinguished, and was not transferred by operation of law to Roger. Cf. McClure v. Harris, ibid. Roger neither knew nor cared that the lien existed, and it is abundantly clear that he did not rely

---

**2.** The findings of fact recite that it is worth $22,500 or more.

**3.** See KRS 392.020.

upon it. "The simple borrowing of money from one to pay for land does not give the lender of the money any lien whatever." Hogg v. Potter, 25 Ky.Law Rep. 492, 76 S.W. 35, 36 (1903). As we view it, the situation is essentially the same as if Billy had borrowed the money from Roger and paid the purchase price in full when the deed was first executed and delivered.

The judgment is affirmed in part and reversed in part with directions that it be modified to secure the widow's dower in accordance with this opinion.