NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0477n.06

FILED
*Jul 02, 2014*
DEBORAH S. HUNT, Clerk

No. 13-6007

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CNH CAPITAL AMERICA LLC,       )
           )
    Plaintiff-Appellant,       )     ON APPEAL FROM THE UNITED
           )     STATES DISTRICT COURT FOR
v.            )     THE WESTERN DISTRICT OF
           )     KENTUCKY
HUNT TRACTOR, INC., et al.,     )
           )
    Defendants-Appellees.     )     **AMENDED OPINION**

**Before: COLE and ROGERS, Circuit Judges; and HOOD, District Judge.**[*]

HOOD, District Judge. Plaintiff-Appellant CNH Capital America LLC ("CNH") appeals

from the summary judgment entered in favor of the Defendant-Appellee Dominick Pagano

("Pagano") by the district court on CNH's claims for conversion, breach of contract, fraudulent

conveyance, and civil conspiracy to commit fraudulent conveyance, as well as the district court's

decision to deny CNH's own motion for summary judgment on its claims of conversion and

fraudulent conveyance.

Hunt Tractor, Inc., of which Pagano was a minority shareholder, and CNH entered into a

Wholesale Financing and Security Agreement to cover Case brand earth-moving equipment.

Following the receipt of a large sum of proceeds covered by the agreement, Hunt Tractor fully paid

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

off its term loan and line of credit loan with another creditor, Commonwealth Bank and Trust Company ("Commonwealth"), remitting none of the proceeds to CNH, in contravention of the agreement between Hunt Tractor and CNH. The payment to Commonwealth benefitted Pagano by allowing him to terminate his personal guaranty and request the release of previously pledged assets securing the loans from Commonwealth to Hunt Tractor.

Based upon Hunt Tractor's violation of the Financing Agreement, CNH brought multiple claims against Hunt Tractor, Scott Hunt, Jr. ("Hunt"), and Dominick Pagano. CNH appeals the district court's grant of summary judgment in favor of Pagano on its claims of conversion, breach of contract, fraudulent conveyance, and civil conspiracy to commit fraudulent conveyance. CNH further appeals the district court's denial of its own motion for summary judgment on its claims of conversion and fraudulent conveyance. For the reasons that follow, the Court will affirm in part and reverse in part.

**I.**

Hunt Tractor was in the business of selling, renting, and repairing new and used earth-moving equipment. [R. 110–36, Page ID 1634]. In 2007, at the insistence of Hunt, Pagano's son-in-law, Pagano made a number of loans to Hunt Tractor, which facilitated Hunt's purchase of the company. After loaning Hunt Tractor $400,000, Pagano converted the debt to equity in the company, making Pagano a minority shareholder. [R. 110–11, Page ID 1481–83; R. 102–5, Page ID 879–84]. Once a stockholder, Pagano made additional advances of $225,000. [R. 102–4, Page ID 874; R. 102–9; Page ID 892; R. 110–11, Page ID 1508, 1511]. Pagano gave business advice to Hunt about running the company, [R. 102–4, Page ID 867], but was never an officer, employee, or director of Hunt Tractor, [R. 102–2, Page ID 859; R. 102–7, Page ID 887], despite being listed as Chairman of the

2

Board on an organizational chart prepared when Hunt was applying for Hunt Tractor to continue as a Case brand dealership. *See* [R. 110–37, Page ID 1637].

Hunt Tractor operated as a licensed Case brand equipment dealer many years before Hunt purchased the company. *See* [R. 102–2, Page ID 860]. On May 30, 1991, before Hunt became the owner, and before Pagano was a stockholder, Hunt Tractor entered into a Wholesale Financing and Security Agreement ("WFSA") with Case Credit Corporation. [R. 110–2, Page ID 1363–78]. Subsequently, Case Credit Corporation was converted from a corporation to a limited-liability company and changed its name to CNH Capital America LLC. [R. 110–3, Page ID 1380–81]. Thus, CNH became the successor to the WFSA. The WFSA granted CNH a security interest in inventory, equipment, all proceeds of inventory, Hunt Tractor's accounts with CNH, and other collateral requested by CNH. [R. 110–2, Page ID 1363–64]. Hunt's interrogatory responses indicate that "[t]he standard protocol was that proceeds were used to keep the doors open before any vendor was paid." [R. 110–13, Page ID 1550]. According to Hunt, CNH was aware of this practice and knew Hunt Tractor was regularly behind on payments. [R. 110–13, Page ID 1550].

CNH was not Hunt Tractor's only source of financing. After acquiring Hunt Tractor, and with help from Pagano, Hunt began moving Hunt Tractor's corporate bank accounts from Fifth Third Bank to Commonwealth. [R. 110–11, Page ID 1488]. In March 2008, Hunt Tractor entered into a $500,000 line of credit and took out a $600,000 term loan with Commonwealth. [R. 110–14, Page ID 1562–63; R. 110–17, Page ID 1572–73]. According to Hunt, the negotiations for these loans were completely handled by Pagano because "he had done business with banks and loans before." [R. 110–10, Page ID 1452–53]. Pagano claims that he was only the initial contact and was not

3

involved in the discussions with Commonwealth on behalf of Hunt Tractor. [R. 102–4, Page ID 870].

Before extending financing to Hunt Tractor, Commonwealth required Hunt Tractor, Hunt, and Pagano to provide security for the loans. Pagano and Hunt executed non-revocable personal guaranties for the full amount of Hunt Tractor's line of credit. [R. 1–6 Page ID 70–72; R. 110–15, Page ID 1565–67; R. 110–12, Page ID 1536–37]. Hunt Tractor granted Commonwealth a security interest in its business assets. [R. 103–22, Page ID 1157].

Additionally, Commonwealth, after noting that Pagano had significant wealth, required a pledge of collateral from Pagano. Pagano pledged securities and executed a control agreement for a Commonwealth trust account, which was composed of EDAC stock, a company owned and run by Pagano. [R. 110–16, Page ID 1569–70; R. 110–11, Page ID 1497]. Pagano initially placed around 300,000 shares of EDAC stock in the trust account. [R. 110–11, Page ID 1502]. Commonwealth demanded more collateral when the value of the EDAC stock fell, and Pagano placed an additional 148,333 shares of EDAC stock in the trust account. [R. 110–11, Page ID 1497–98, 1501; R. 110–19, Page ID 1582]. Pagano could only have his collateral in the trust account released when "all of the obligations secured by Collateral ha[d] been satisfied," or upon the consent of Commonwealth Bank. [R. 110–16, Page ID 1569; R. 110–18, Page ID 1575]. Pagano also pledged a TD Banknorth brokerage account. [R. 110–22, Page ID 1592–98]. The control agreement executed on the TD Banknorth brokerage account was expressly irrevocable. [R. 110–22, Page ID 1595].

Eventually, Hunt Tractor began having problems meeting its payment obligations to CNH. In early 2009, CNH extended some of the payments, but Hunt Tractor requested further extension

in June. [R. 102–10, Page ID 893]. In July 2009, Pagano learned that Hunt Tractor had been missing principal payments to CNH. [R. 110–11, Page ID 1513]. This led Pagano to begin considering withdrawing his personal guaranty and collateral on the loans extended by Commonwealth. [R. 102–4, Page ID 875]. However, under the terms of the agreements, Pagano could only be released from his obligations when the term note and line of credit reached a zero balance. [R. 110–25, Page ID 1605].

Meanwhile, in July 2009, the Kentucky Department of Transportation ("KYDOT") placed a large order with Hunt Tractor. [R. 110–13, Page ID 1560]. Hunt Tractor received payment for this order on November 9, 2009. [R. 110–13, Page ID 1560]. The check from the KYDOT, made out for $825,347.00, was deposited in Hunt Tractor's bank account at Commonwealth on November 12. [R. 110–27, Page ID 1609]. On the same day, Commonwealth received notification from Pagano that he wished to remove his guaranties from the term loan and line of credit and Pagano requested the payoff amounts and documents to release his collateral. [R. 110–28, Page ID 1611]. On November 13, 2009, Hunt was sent payoff and close out letters for both he and Pagano. [R. 110–29, Page ID 1615]. Additionally, Hunt was informed that, if Hunt Tractor intended to maintain a credit relationship with Commonwealth, Pagano would need to notify the bank, within 48 hours, that he was willing to continue to guarantee the debts of Hunt Tractor. [R. 110–29, Page ID 1615].

Thereafter, on November 16 and 17, 2009, Hunt Tractor fully paid off its debts to Commonwealth. The line of credit was paid down to zero on November 16, 2009 when an automatic sweep of Hunt Tractor's bank account with Commonwealth took place, pursuant to the conditions placed on Hunt Tractor's deposit account. *See* [R. 110–33, Page ID 1627]. The term loan was paid off when Hunt wrote checks for $501,549.87 on November 16, [R. 110–31, Page ID 1622],

5

and another for $27,089.77 on November 17. [R. 110–31, Page ID 1623]. On November 16, Hunt informed Commonwealth not to advance any more funds on the line of credit and to turn off the automatic sweep feature of the bank account. [R. 102–14, Page ID 903]. The majority of the money used to pay off the loans came from the sale to the KYDOT. None of the proceeds from the sale to the KYDOT were remitted to CNH, as required by the WFSA.

On the morning of November 18, 2009, at 6:52 a.m., Pagano again requested that his personal guaranty and assets be released. [R. 110–11, Page ID 1524; R. 110–32, Page ID 1625]. With the loans fully paid off, and after completing the necessary paperwork, Pagano was released of his personal guaranty and the security interest on his collateral was released. [R. 110–32, Page ID 1625]. Pagano testified that he did not recall the payment from the KYDOT coming to Hunt Tractor and he was not notified of its receipt. [R. 102–4, Page ID 877].

According to Mike Litke, the regional supervisor for CNH and manager of Hunt Tractor's account with CNH, CNH was notified of Hunt Tractor's transactions with Commonwealth by Hunt. [R. 110–6, Page ID 1394]. Litke testified that Hunt told him the bank had called the line of credit and all the money from the sale to the KYDOT had gone to the bank. [R. 110–6, Page ID 1394].

Ultimately, despite attempting to operate without Pagano, Hunt Tractor was unable to meet its obligations to CNH. CNH notified Hunt Tractor of default and termination of the dealer agreement on March 15, 2010. [R. 102–19, Page ID 909]. Hunt Tractor is no longer an operating business.

Based upon Hunt Tractor's failure to remit the proceeds of the KYDOT sale to CNH pursuant to the WFSA, CNH brought claims against Hunt Tractor, Hunt, and Pagano. CNH brought claims of breach of contract against Hunt Tractor, breach of guaranty against Hunt, breach of

6

fiduciary duty against Pagano and Hunt, fraudulent concealment against Pagano and Hunt, civil conspiracy to commit fraud against Pagano and Hunt, preferential conveyance against Pagano and Hunt, civil conspiracy to make a preferential conveyance against Pagano and Hunt, fraudulent conveyance against Pagano and Hunt, civil conspiracy to make a preferential conveyance against Pagano and Hunt, breach of contract under a theory of piercing the corporate veil against Pagano, conversion against Pagano and Hunt, and punitive damages against Pagano and Hunt. [R. 1, Page ID 1–34].

The district court granted CNH's motion for summary judgment on the breach of contract claim against Hunt Tractor and for breach of guaranty against Hunt. [R. 117, Page ID 1861–74]. The district court granted summary judgment in favor of Pagano on all claims against him. [R. 117, Page ID 1874–87]. CNH appeals the district court's decision to grant Pagano's motion for summary judgment on its claims of conversion, breach of contract under a theory of piercing the corporate veil, fraudulent conveyance, and civil conspiracy to commit fraudulent conveyance. CNH also appeals the district court's decision to deny its motion for summary judgment on its claims of conversion and fraudulent conveyance.

## II.

"The standard of review for a district court's grant of summary judgment is *de novo*." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 235 (6th Cir. 1992) (citing *Massey v. Exxon Corp.*, 942 F.2d 340, 342 (6th Cir. 1991)). A motion for summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing

7

the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp.*, 967 F.2d at 236 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.

CNH appeals the district court's decision to grant Pagano's motion for summary judgment on the claims of conversion, breach of contract under a veil piercing theory, fraudulent conveyance, and civil conspiracy. Additionally, CNH appeals the district court's decision to deny its own motion for summary judgment on the claims of conversion and fraudulent conveyance. The Court will reverse and remand the district court's grant of summary judgment in favor of Pagano on the conversion claim and affirm in all other respects.

First, CNH appeals the district court's determination that Pagano was not liable for conversion because he did not exercise dominion and control over the proceeds of the sale to the KYDOT. Finding genuine issues of material fact on the issue of whether Pagano exercised dominion and control over the proceeds, this Court will reverse.

To prove conversion under Kentucky law, a plaintiff must show:

(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own

8

use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Ky. Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005) (citations omitted).

The district court granted summary judgment on this issue based on a finding that Pagano did not exercise control over the proceeds of the sale to the KYDOT because the funds always remained in accounts held by Hunt Tractor. [R. 117, Page ID 1886]. Finding it dispositive, the district court only analyzed the dominion and control element of conversion.

CNH argues that because Pagano was neither an employee or officer of Hunt Tractor, Pagano claims to have had no authority to act on behalf of Hunt Tractor, and that the district court found Pagano directed the funds to be paid, Pagano must have asserted dominion and control over the proceeds. CNH further argues that a corporate officer can be personally liable for acts committed on behalf of a corporation. Pagano argues that he could not have exercised dominion and control over the funds because the Hunt Tractor bank account was controlled solely by Hunt, and that any benefit received by Pagano did not amount to dominion and control.

The district court erred when it found that Pagano was responsible for ordering the loans to be repaid. There remains a genuine issue of material fact as to Pagano's involvement in using the proceeds of the sale to the KYDOT to pay off the loans owed to Commonwealth. Pagano testified that he was "pleasantly surprised" to find out the term loan had been paid in full and that he had no notice that Hunt Tractor would be paying off the term loan. [R. 103–12, Page ID 1094].

9

Furthermore, Pagano testified that he did not know how Hunt Tractor managed to pay off the loans, but he assumed Hunt Tractor had acquired some receivables. [R. 110–11, Page ID 1522].

Conversely, Scott Hunt testified that Pagano had told Commonwealth "that we were going to be paying [the term loan] off." [R. 102–2, Page ID 860]. Additionally, Hunt testified that the decision to close out the line of credit was made by Pagano. [R. 110–10, Page ID 1460]. Hunt further testified that he and Pagano discussed the decision to pay Commonwealth instead of CNH. [R. 102–2, Page ID 860]. Therefore, the district court erred in granting summary judgment on CNH's conversion claim.

The district court also erred, as a matter of law, when it found that Pagano could not be personally liable for conversion because the proceeds were always maintained within the bank account of Hunt Tractor. "[T]he law is well settled that an agent of a corporation is personally liable for a tort committed by him though he was acting for the corporation. There are numerous cases holding a corporate officer liable for conversion of personal property by him for the benefit of his corporation." *Small v. Bailey*, 356 S.W.2d 756, 757 (Ky. 1962) (citations omitted); *see also* KRS 271B.6-220(2) ("Unless otherwise provided in the articles of incorporation, a shareholder of a corporation . . . may become personally liable by reason of his own acts or conduct."). While Pagano was never officially an officer, he was a minority shareholder and regularly gave advice to Hunt, the president of the corporation. Thus, if Pagano was responsible for the transfer of the funds, and was therefore acting on behalf of Hunt Tractor, he could be personally liable for the tort of conversion. Accordingly, we affirm the district court's denial of CNH's motion for summary judgment on the claim of conversion and reverse the district court's grant of Pagano's motion for summary judgment. We remand this issue for proceedings consistent with this opinion.

Next, CNH appeals the district court's decision to grant Pagano's motion for summary judgment on the breach of contract claim under a theory of piercing the corporate veil. The district court granted Pagano's motion for summary judgment on CNH's claim for veil piercing upon a finding that observing the corporate form would not sanction fraud or promote injustice. [R. 117, Page ID 1885]. The district court did not address whether Hunt Tractor had lost its corporate separateness. Because CNH does not present an injustice beyond the mere inability to collect a debt, the Court will affirm the district court's grant of summary judgment.

"[T]he doctrine of piercing the corporate veil arises in equity." *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 175 (Ky. 2012) (citations omitted). "[A] court will disturb the legal fiction of corporate separateness only in the rarest of circumstances." *Id.* at 174. Under any theory, a successful veil piercing claim in Kentucky must show "two dispositive elements: (1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Techs., Inc. v. Linn Station Props.*, *L.L.C.*, 360 S.W.3d 152, 165 (Ky. 2012). This test requires "the trial court [to] state specifically the fraud or injustice that would be sanctioned if the court declined to pierce the corporate veil[,]" and the fraud or injustice identified "must be something beyond the mere inability to collect a debt from the corporation." *Id.* at 165.

Fraud will be sanctioned or injustice promoted "where 'a party would be unjustly enriched; [where] a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful.'" *Id.* at 164 (alteration in original) (quoting *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 524 (7th Cir. 1993)).

11

CNH has not asserted an injustice beyond the mere inability to collect a debt. Hunt Tractor paid off a legitimate business debt with funds it received, albeit in violation of its agreement with CNH. As a result of making the payments to Commonwealth, Hunt Tractor was left with no money with which to pay its debts to CNH. Pagano's ability to have his personal guaranty and pledged assets released was just a byproduct of the payment, which, according to Hunt, was made because Hunt believed a local bank "has a little bit more power tha[n] CNH Capital." [R. 102–2, Page ID 860]. On these facts, the only injustice is that Hunt Tractor was unable to pay CNH. As stated by the Kentucky Supreme Court, this is simply not enough to justify piercing the corporate veil.

Moreover, the equitable doctrine of piercing the corporate veil is the incorrect remedy for the wrong alleged by CNH.

> The type of fraud that [plaintiff] alleges is precisely that protected by fraudulent conveyance law and does not rise to the level required to pierce the corporate veil. . . . Fraudulent conveyance law is more carefully tailored to the interests of all parties than the blunt instrument of piercing the corporate veil. . . . The remedy in fraudulent conveyance stands in sharp contrast with the general remedy in veil piercing. When the corporation's veil is pierced, the individual shareholders are liable for the corporation's debts, which could exceed the value of the assets fraudulently conveyed.

*Waste Conversion Techs., Inc. v. Warren Recycling, Inc.*, 191 F. App'x 429, 434–35 (6th Cir. 2006). Thus, the district court's grant of Pagano's summary judgment motion on the breach of contract claim is affirmed.

CNH also appeals the district court's grant of Pagano's motion for summary judgment on CNH's claims of fraudulent conveyance under Kentucky Revised Statutes 378.010 and 378.020. The district court granted Pagano's motion for summary judgment on the basis that Pagano was not a transferor or transferee, and the statutes do not authorize third-party liability. [R. 117, Page ID 1880]. The district court further concluded that compensatory damages were not available for

12

fraudulent conveyance under Kentucky law and, even if they were, damages could only be awarded against a transferor or transferee. [R. 117, Page ID 1880–81]. We affirm the district court's decision.

Kentucky Revised Statute 378.010 provides, in pertinent part, that: "Every gift, conveyance, assignment or transfer . . . made with the intent to delay, hinder or defraud creditors . . . shall be void as against such creditors." KRS 378.010. Kentucky Revised Statute 378.020 provides that:

> Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors, but shall not, on that account alone, be void as to creditors whose claims are thereafter contracted, nor as to purchasers from the debtor with notice of the voluntary alienation or charge.

KRS 378.020.

First, the Court must determine which transfer CNH alleges was fraudulent, as CNH seeks to impose liability upon Pagano based upon the fact that his pledged assets were transferred to him free of any security interest when Hunt Tractor paid off its loans from Commonwealth. The fraudulent transfer at issue must be the transfer from Hunt Tractor to Commonwealth because CNH asserts no wrongdoing on the part of Commonwealth. *See* Appellant Br., p. 52 ("Commonwealth Bank was merely a conduit."); [R. 110, Page ID 1341] ("[Commonwealth Bank] was merely an intermediary for the transfer."). Additionally, CNH's arguments that Commonwealth was a conduit and that collapsing the transaction can allow Pagano to be considered the transferee are unavailing.

CNH cites *McMurray v. McMurray*, 410 S.W.2d 139 (Ky. 1966), for the proposition that a beneficiary can be liable under Kentucky statutes and that the transactions can be collapsed, such that Hunt Tractor is the transferor and Pagano is the transferee. *See* Appellant Br., p. 47. CNH misreads *McMurray's* holding on both accounts. In its citation of the case, CNH characterizes *McMurray* as

13

making a wife liable for a transfer received by a third party. Appellant Br., p. 46 ("[H]usband-debtor's payment of funds to bank held to be a fraudulent transfer to wife by increasing the value of wife's interest in property."). However, *McMurray* found "that the conveyance of an interest to Joyce without consideration was avoidable as to Billy's then existing debts." *McMurray*, 410 S.W.2d at 141. Thus, even though multiple transfers were involved in the case, the fraudulent transfer at issue was from Billy to Joyce, and Joyce was the transferee, not a beneficiary. It was Billy's transfer of an interest in real property to Joyce, without consideration, that was fraudulent. In this transaction, Joyce was the direct, and only, transferee. The court did not collapse any of the transactions and did not create a legal fiction to determine the transferor and transferee. Second, when the court collapsed multiple transactions it did so only to determine the amount of the fraudulent transfer, not to determine if there was a fraudulent transfer. *Id.* Thus, *McMurray* does not support the conclusion that Pagano can be liable as a beneficiary.

CNH's argument that Commonwealth was a conduit is also misguided. The cases cited by CNH bear no factual resemblance to the matter before this Court. In *Harris v. National Investment & Finance Company (In re Akin)*, the debtor was transferring personal assets into a corporation he controlled so that those assets could not be reached by creditors. 64 B.R. 510, 518 (Bankr. W.D. Ky. 1986) ("National, as the conduit and recipient of these transfers, was merely the convenient corporate vehicle through which Akin isolated those assets."). Hunt Tractor was not attempting to hide assets they could later control, but was instead, by paying one legitimate creditor over another, relinquishing its right to control the proceeds. The other case relied upon by CNH, *Schilling v. Montalvo (In re Montalvo)*, simply held that a father was not a recipient of a fraudulent conveyance when his son mailed him a loan payment, which the father took from a post office to the creditor

14

bank. 324 B.R. 619, 622–23 (Bankr. W.D. Ky. 2005). Here, Commonwealth, unlike the father, had a right to the money and kept the money, rather than facilitating a transfer to the rightful transferee. Thus, the transfer that was allegedly fraudulent was the transfer of the loan payment to Commonwealth from Hunt Tractor.

As an initial matter, the Court finds that CNH's claim under KRS 378.020, and CNH's argument that Pagano received a gift under KRS 378.010, must fail because adequate consideration, the loan, was transferred for the loan payments from Hunt Tractor to Commonwealth. *See Schilling v. Montalvo (In re Montalvo)*, 324 B.R. 619, 623 (Bankr. W.D. Ky. 2005) ("The checks made directly payable to the Bank were clearly made for valuable consideration, *i.e.*, the initial loan.").

The Kentucky statutes for fraudulent conveyances only allow recovery for a fraudulent conveyance from a transferor or transferee. Unlike the Uniform Fraudulent Transfer Act, the Kentucky statutes do not explicitly allow recovery from a beneficiary of the transfer. *Compare* Unif. Fraudulent Transfer Act § 8(c) *with* KRS 378.010 – .100. The Kentucky statutes under which CNH brought its claims both provide that a fraudulent transfer "shall be void." KRS 378.010 – .020. This language does not suggest that a mere beneficiary of a transfer can be held liable for the transfer. To void a transfer implies only those party to the transfer need be involved. *See* Black's Law Dictionary 763 (3d pocket ed. 2006) (defining void as "of no legal effect"). The Kentucky General Assembly has specifically chosen not to adopt the Uniform Fraudulent Transfer Act or a similar section that would explicitly allow recovery from beneficiaries. This Court will not provide a remedy the Kentucky legislature has not included in the statute. Furthermore, although Kentucky state courts are silent on the issue, Kentucky federal district courts have interpreted the statutes as precluding recovery from a beneficiary. *See GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 642

15

(E.D. Ky. 2012) (citations omitted) ("[A] direct liability fraudulent conveyance claim is only actionable against the transferor or transferee."); *see also Princesse D'Isenbourg et Cie, Ltd. v. Kinder Caviar, Inc.*, No. 3:12-cv-4-DCR, 2013 WL 147841, at *6 (E.D. Ky. Jan. 14, 2013) (citing *GATX Corp.*, 879 F. Supp. 2d at 642) (holding that only the transferor or transferee can be liable for a fraudulent conveyance claim). As Pagano was not was a direct transferee or transferor, Commonwealth was not a conduit, and there is no justification for collapsing the transactions, Pagano cannot be liable for fraudulent conveyance.[1]

The Court has considered the dissent and its position, and finds fault with the analysis for the reasons which follow. The Court finds fault with the dissent's reliance on Kentucky cases that hold a payment of a valid, preexisting debt can serve as a fraudulent conveyance. Kentucky case law on this point is mixed. *See Jadco Enterprises, Inc. v. Fannon*, No. 6:12-cv-225-DCR, 2014 WL 66521, at *4 (E.D. Ky. Jan. 8, 2014) ("[T]here is some inconsistency in Kentucky opinions discussing fraudulent conveyances."). To this end, the case cited by the dissent, *Farmers' Bank of Fountain Run v. Hagan*, holds that the transfer of a mortgage from a husband to a wife in satisfaction of a valid, preexisting debt was not a fraudulent conveyance. *Farmers' Bank of Fountain Run v. Hagan*, 46 S.W.2d 1084, 1087–88 (Ky. 1932). The court affirmed the judgment giving the wife a mortgage in the amount of $880.00, *id*. at 1086, after finding it was compelled to follow case law holding that

---

[1]    The Court will not address CNH's argument that Kentucky law allows compensatory damages as a remedy for fraudulent conveyance. Kentucky courts are silent on this issue and the Court will not wade into murky waters when the Court's decision would have no bearing on the outcome of this appeal. *See Princesse D'Isenbourg et Cie, Ltd. v. Kinder Caviar, Inc.*, No. 3:12-cv-004-DCR, 2013 WL 147841, at *6 (E.D. Ky. Jan. 14, 2013) ("Because 'Kentucky courts have not explicitly reached this conclusion,' the Court declines to extend Kentucky law to allow for compensatory damages from a transferee." (quoting *GATX Corp.*, 879 F. Supp. 2d at 642)).

a transfer to satisfy a valid, preexisting debt could be preferential, not fraudulent. *Id*. at 1088.

Specifically, the court relied on *Seiler v. Walz*, which stated:

> By preferring the son as a creditor, the father committed no actual fraud on his other creditors. It was commendable in him to pay his debts, and he might prefer one creditor over another without committing actual fraud, or doing aught that is denounced in the statute relied on by the appellee. Relief from such a preference must be sought under another and different statute.

*Seiler v. Walz*, 29 S.W. 338, 339 (Ky. 1895); *see also Farmers' Bank of Fountain Run*, 46 S.W.2d at 1087 (quoting *Seiler*, 29 S.W. at 339). Even if *Farmers' Bank* had found a fraudulent conveyance based upon the payment of a valid, preexisting debt, it would further support that Commonwealth was the proper party to sue. In that case, the husband was the transferor and the wife was the transferee. Those facts are analogous to this case, with Hunt Tractor in the position of the husband and Commonwealth the wife. The creditor in *Farmers' Bank* sued the direct transferee, the wife, not a beneficiary of the transfer. Thus, the proper party for suit was the wife, or Commonwealth, and this case does not provide support that Kentucky law allows a beneficiary of a transfer to be liable on a theory of fraudulent conveyance. The cases relied upon by the dissent that allow a fraudulent conveyance claim when a debtor improves the value of the property of another likewise do not involve a recovery against a beneficiary because, even though the owner of the property may have benefitted, as owner of the land they are the direct transferee of the value of the improvements. *See, e.g.*, *Pierce v. J.B. Pierce's Trustee in Bankruptcy*, 38 S.W.2d 254, 259 (Ky. 1931) ("The lot of Mrs. Pierce was not liable for the debts of her husband; but, to the extent his expenditures had increased the vendible value of her lot, his creditors had a claim.").

While the Court declines to address CNH's argument that it is entitled to recover compensatory damages, a discussion of the proper remedy for a successful fraudulent conveyance

claim further illustrates that a beneficiary cannot be liable for a fraudulent conveyance under Kentucky law. Kentucky courts have not reached the conclusion that money damages are available. *See Princesse D'Isenbourg et Cie, Ltd. v. Kinder Caviar, Inc.*, No. 3:12-cv-4-DCR, 2013 WL 147841, at \*6 (E.D. Ky. Jan. 14, 2013) ("Because 'Kentucky courts have not explicitly reached this conclusion,' the Court declines to extend Kentucky law to allow for compensatory damages from a transferee." (quoting *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 642 (E.D. Ky. 2012))). Rather, "the proper remedy for a fraudulent conveyance claim is the nullification of the transfer by returning the property at issue back to the transferor." *Id*. (quoting *GATX Corp*., 879 F. Supp. 2d at 641); *see also Mattingly v. Gentry*, 419 S.W.2d 745, 747 (Ky. 1967) ("[T]he purpose of KRS 378.020 is to put the creditors back in the same position they would have enjoyed immediately prior to the voidable conveyance."). This remedy is best illustrated by the portion of the *Farmers' Bank* opinion that found the transfer of an automobile, without valuable consideration, was a fraudulent transfer. *See Farmers' Bank*, 46 S.W.2d at 1086–87 (declaring that the evidence shows that, as to the automobile, "there was no consideration for the transfer"). "[T]he only relief appellant was entitled to on this score was to have the transfer set aside and the automobile sold to satisfy the attachment lien." *Id*. at 1088. Thus, the proper remedy, an unwinding of the transaction, can only be enforced against the transferor or a transferee that actually received the property, not a beneficiary. In effect, the dissent would require Pagano to return an automobile he never received.

The Court does not agree that *GATX Corp. v. Addington* is distinguishable from the case at hand. The holding in *GATX Corp.* was dictated by the fact that "a direct liability fraudulent conveyance claim is only actionable against the transferor or transferee." *GATX Corp.*, 879 F. Supp. 2d at 642 (citations omitted). The Court finds that the alleged fraudulent transfer was the transfer

18

from Hunt Tractor to Commonwealth, and Pagano was neither transferor, nor transferee. Thus, Pagano cannot be directly liable on a fraudulent conveyance claim.

The dissent may be persuaded by CNH's jewelry store hypothetical because it is nonsensical for the creditors of the husband to be forced to sue the jewelry store, rather than the wife, the beneficiary of the transfer. However, this outcome is dictated by the express language of the statute and the interpretations of the statute by Kentucky courts. Whether the statute provides the most logical or most desirable avenue of relief is immaterial to our decision. Simply put, it is inappropriate to read a remedy into a statute that is not there, especially given that in the 108 year history of KRS 378.010 not a single recorded Kentucky case allows for recovery of a money judgment against a beneficiary of a fraudulent transfer. Accordingly, the district court's grant of Pagano's motion for summary judgment and denial of CNH's motion for summary judgment on the fraudulent conveyance claim is affirmed.

Finally, CNH appeals the district court's decision to grant Pagano's motion for summary judgment on the count alleging civil conspiracy to commit a fraudulent conveyance. The district court determined that CNH, by bringing this claim, was attempting to bypass Kentucky law, which does not allow non-transferees to be liable for fraudulent conveyance. Thus, according to the district court, CNH could not use a conspiracy claim to reach a result that could not be reached by bringing a claim for the completed tort. [R. 117, Page ID 1882–83].

"Civil conspiracy . . . has been defined as 'a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.'" *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 260–61 (Ky. Ct. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936)). The

19

damage must result "from some overt act done pursuant to or in furtherance of the conspiracy." *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (Ky. 1945). "Civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, L.L.C. v. Buckram Oak Holdings, N.V.*, Nos. 2008-CA-002389-MR, 2009-CA-000026-MR, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010) (citations omitted). Thus, for a claim of civil conspiracy to be viable, it must be based upon an underlying tort. *See id.* at *14 ("Stonestreet's claim of civil conspiracy thus has no tort to be based upon and cannot survive as a matter of law.").

CNH's claim of civil conspiracy to commit a fraudulent conveyance must fail. Pagano cannot be liable for fraudulent conveyance because he was neither the transferee nor transferor. Pagano cannot be liable for conspiring to perform a tort he could not commit as a matter of law. CNH's argument, that Kentucky law should not protect those who benefit from a fraudulent conveyance, ignores the fact that, despite whatever CNH thinks the law should be, the Kentucky General Assembly has chosen not to create a statute making beneficiaries of a fraudulent transfer liable for that transfer. Therefore, the "claim of civil conspiracy thus has no tort to be based upon and cannot survive as a matter of law." *Id.* The district court's decision to grant Pagano's motion for summary judgment on the civil conspiracy claim is affirmed.

## IV.

For all of the reasons stated above, we **AFFIRM** the district court's grant of Pagano's motion for summary judgment on the claim of breach of contract, fraudulent conveyance, and civil conspiracy to commit a fraudulent conveyance, as well as the district court's denial of CNH's motion for summary judgment on the claims of conversion and fraudulent conveyance. We **REVERSE** and

20

**REMAND** the district court's grant of Pagano's motion for summary judgment on the conversion claim.

ROGERS, J., concurring in part and dissenting in part. I agree with all aspects of the majority opinion, except with respect to the fraudulent conveyance claim. In this case, Scott Hunt transferred corporate funds to relieve his father-in-law of encumbrances held by Commonwealth Bank on his father-in-law's property. Assuming that the funds, while owed to Commonwealth, should have gone first to CNH (the record is not clear on that point), the fact that CNH did not sue Commonwealth should not preclude a fraudulent conveyance claim against Pagano for the value of the lifted encumbrance.

So stated, this case is not materially different from a hypothetical suggested by CNH. Suppose a debtor transfers funds to relieve his spouse's debt to a jewelry dealer for a ring that the spouse bought. If the debtor is trying thereby to protect his assets from his creditor, the creditor should not have to sue the jewelry dealer. Instead, the jeweler should be able to sue the spouse for the value of the ring.

This conclusion is supported by the numerous Kentucky cases that hold that the payment of a valid, preexisting debt can be a fraudulent conveyance if done with intent to defraud or hinder a creditor. *See, e.g.*, *Farmers' Bank of Fountain Run v. Hagan*, 46 S.W.2d 1084, 1087 (Ky. 1932); *Jadco Enters., Inc. v. Fannon*, No. 6:12-225, 2014 WL 66521, at *3 (E.D. Ky. Jan 8, 2014). Similarly, Kentucky courts have held that a creditor may have a fraudulent conveyance claim when a debtor improves the property of another in an effort to keep his assets from falling into the hands of creditors. *See Pierce v. J.B. Pierce's Trustee in Bankruptcy*, 38 S.W.2d 254, 259 (Ky. 1931). This case is similar because Hunt's actions caused Pagano to receive lien-free collateral. Furthermore, CNH has identified factually similar cases involving actions against guarantors. For example, *Permasteelisa CS Corp. v. The Airolite Co.*, No. 2:06-CV-569, 2007 WL 4615779 (S.D.

Ohio Dec. 31, 2007), involved a direct liability fraudulent conveyance claim brought against the president of a corporation. The president argued that because "he [was] not the 'transferee,' no judgment [could] be entered against him," *id.* at *7 n.3, i.e. the same argument Pagano makes here. The *Permasteelisa* court conceded that the president was not the first transferee, but noted that "it could certainly be argued that the transfer was made for his benefit. He sought to sell TAC's assets so that he could pay off the debt to People's Bank to avoid being held personally liable on the loan." *Id.*

On the other hand, *GATX Corp. v. Addington*, 879 F. Supp. 2d 633 (E.D. Ky. 2012), is distinguishable. In that case, the defendant Larry Addington had guaranteed the debts of a foundering company. *Id.* at 637. Ostensibly to avoid paying the guaranty, Addington transferred many of his assets into an irrevocable trust and named Stephen and Robert as co-trustees. *Id.* at 638. GATX then sued Stephen and Robert in their individual capacities. *Id.* at 641. The court reasoned that GATX could not bring a fraudulent transfer action against Stephen and Robert because they were not transferees of any property in their individual capacity (property had only been transferred to the trust and to the two in their capacities as trustees). *Id.* at 642–43. That ruling is perfectly reasonable. The remedy for a fraudulent conveyance is the undoing of the transfer, but if no transfer occurred, there is nothing to undo. Further, an individual that does not receive a transfer could hardly be considered a transferee. But here, Pagano did receive a transfer of property: his unencumbered, pledged collateral.

Finally, cases like *Permasteelisa* are persuasive even though they discuss the law of jurisdictions that have adopted the Uniform Fraudulent Transfer Act. The UFTA specifically provides that "judgment may be entered against . . . the person for whose benefit the transfer was

23

made." *See, e.g.*, Ohio Rev. Code § 1336.08. Kentucky has not adopted the UFTA, but rather has enacted a fraudulent conveyance statute based on the English Statute of 13 Elizabeth. For that reason, the district court held that case law involving the UFTA was not persuasive. *See CNH Capital Am. LLC v. Hunt Tractor Inc.*, No. 3:10-CV-350, 2013 WL 1310878, at *16 (W.D. Ky. Mar. 26, 2013). The fact that the Kentucky legislature has not chosen to adopt the UFTA does not mean that Kentucky has rejected the possibility that a fraudulent transfer suit can be brought against the beneficiary of a transfer. As the Kentucky Supreme Court recently held, "legislative inaction is a weak reed upon which to lean and a poor beacon to follow in construing a statute." *Shawnee Telecomm. Res., Inc. v. Brown*, 354 S.W.3d 542, 560 (Ky. 2011) (internal alterations omitted). It is just as likely that the Kentucky legislature chose not to adopt the UFTA because it assumed that persons for whose benefit a transfer was made were already liable under the current regime as it is that the legislature chose not to enact the UFTA to preclude liability against such individuals.

Assuming that there is a genuine issue as to whether Hunt acted with the requisite fraudulent intent, I would allow this claim to proceed to trial.